16 So.2d 352

**HIBERNIA NAT. BANK IN NEW OR-
LEANS v. NATIONAL BANK OF COM-
MERCE IN NEW ORLEANS.**

No. 37292.

Dec. 13, 1943.

Phelps, Dunbar, Marks & Claverie, McCloskey & Benedict, and Rosen, Kammer, Wolff, Hopkins & Burke, all of New Orleans, for appellant.

Lemle, Moreno & Lemle and Schwartz, Guste, Barnett & Redmann, all of New Orleans, for appellee.

ROGERS, Justice.

This is a suit wherein the Hibernia National Bank in New Orleans (hereinafter referred to as Hibernia Bank) seeks to

recover $100,000, with interest, from the National Bank of Commerce in New Orleans (hereinafter referred to as Bank of Commerce). Hibernia Bank's action is founded on the guaranty by the Bank of Commerce of the endorsement of a cashier's check for the amount sued for, issued by Hibernia Bank to the order of Louisiana State University and Agricultural and Mechanical College (hereinafter referred to as Louisiana State University).

Hibernia Bank alleges that on June 14, 1939, it made a loan of $100,000 to Louisiana State University, represented by J. M. Smith, its then president; that the loan was evidenced by a demand note for the amount borrowed, made payable to the order of Hibernia Bank by Louisiana State University, through Smith; that on June 14, 1939, Hibernia Bank issued its cashier's check payable to Louisiana State University for the amount of the loan; that on June 15, 1939, the check bearing the endorsement of Louisiana State University, by Smith as president, and the guaranty of the endorsement by the Bank of Commerce, was presented for payment to Hibernia Bank through the New Orleans Clearing House; that relying on the endorsement and guaranty Hibernia Bank paid the amount of the check to the Bank of Commerce; that thereafter Hibernia Bank was informed, and so avers, that the endorsement appearing on the check was void because Smith was unauthorized to make the endorsement and that no part of the proceeds of the check was received by Louisiana State University or used or applied for its benefit; that Louisiana State

University has refused to recognize the validity of the loan made by Smith and has repudiated the entire transaction.

The Bank of Commerce in its answer to the petition admits the allegations relative to the loan, the issuance of its cashier's check by Hibernia Bank to the order of Louisiana State University, the endorsement of the check by Smith in the name of the University, the guaranty of the endorsement, and the collection of the amount of the check. But Bank of Commerce denies that Hibernia Bank paid the amount of the check relying upon the endorsement and guaranty as set forth in the petition and, for want of information, Bank of Commerce denies the allegations relative to the refusal of Louisiana State University to recognize the validity of the transaction. The Bank of Commerce avers that the alleged repudiation of the transaction by Louisiana State University is a matter which relates to a controversy between Hibernia Bank and the University; that the check issued by Hibernia Bank to the order of Louisiana State University was endorsed in the name of the University by its then president, J. M. Smith, and was properly deposited in the account maintained with Bank of Commerce by the University which was credited with the amount of the deposit the day it was made. Bank of Commerce denies any liability to Hibernia Bank.

Upon the issues thus made up, the case was heard on the merits and resulted in a judgment in favor of Bank of Commerce and against Hibernia Bank dismissing the suit. Hibernia Bank is appealing from the judgment.

Much evidence, both oral and documentary, was produced by the parties on the trial of the case. As disclosed by the evidence, these are the facts.

On June 14, 1939, James M. Smith, presented to Hibernia Bank a resolution, certified by him as President and ex-officio Secretary of Louisiana State University, purporting to authorize him as President to borrow on behalf of the University from Hibernia Bank the sum of $100,000 and to execute a demand note therefor. On the faith of what it considered to be a valid resolution, Hibernia Bank agreed to make the loan referred to therein. Accordingly, Hibernia Bank accepted the note of Louisiana State University executed by Smith as President, and, contemporaneously therewith, executed its cashier's check for $100,000 payable to "Louisiana State University and Agricultural and Mechanical College." The check was delivered to Smith, who, on the same day—June 14, 1939—after endorsing the check "Louisiana State University and A. & M. College, per J. M. Smith, Pres.," delivered the check to the discount clerk of the Bank of Commerce. On the next day—June 15, 1939—the check, bearing Smith's endorsement and the guaranty of the endorsement by Bank of Commerce, was presented for payment to Hibernia Bank, through the New Orleans Clearing House. Relying on the guaranty by the Bank of Commerce and pursuant to section 9 of Rule 4 of the Rules and Regulations of the New Orlean Clearing House Association, Hibernia

Bank paid $100,000, the amount of its cashier's check, to the Bank of Commerce.

The principal bank account of Louisiana State University was carried in the City National Bank of Baton Rouge. However, on February 3, 1937, Smith opened an account in the name of the University with the National Bank of Commerce in New Orleans. The initial deposit in the account, amounting to $1,006,888.90, represented the proceeds of $1,000,000 of 4% Serial Bonds of the University, which Smith was authorized to sell and deliver to certain dealers in bonds in accordance with a resolution of the Board of Supervisors adopted on January 11, 1937. Thereafter, from time to time, other deposits were made in the account until it was closed on June 29, 1939. These deposits were made up largely of proceeds derived from the sale of bonds or from the collection of interest coupons attached to the bonds, which transactions were handled through the bond department of the National Bank of Commerce. The amounts deposited were withdrawn from time to time by checks signed by C. G. Johnson, auditor of the University. Many of these withdrawals were for relatively small sums. The $100,000 represented by the check of Hibernia Bank was placed to the credit of Louisiana State University on June 14, 1939, the day the check was delivered by Smith to the Bank. The next day—June 15, 1939—Smith withdrew the $100,000 from the Bank of Commerce. On that day, Smith, on his oral request, obtained from the discount clerk of the Bank of Commerce a cashier's check made pay-

able to the order of Fenner & Beane, a stock and bond brokerage house in New Orleans. This check was delivered by Smith to J. M. Brown, who was carrying an account on the books of Fenner & Beane in his name for the benefit of Smith personally. Brown delivered the check to Fenner & Beane, and its proceeds were used to discharge a personal indebtedness due by Smith to that firm. This indebtedness grew out of certain speculations in wheat in which Smith was engaged.

When the account of Louisiana State University in the Bank of Commerce was closed on June 29, 1939, there remained to the credit of the University, exclusive of the deposit on June 14, 1939, of the $100,000 in contest here, the sum of $7,797.73. This balance was withdrawn and the account closed under the direction of Dr. Paul M. Hebert, Acting President of the Louisiana State University.

On June 25, 1939, Smith left the State of Louisiana, and on June 27, 1939, Dr. Hebert, who was Dean of the Law School, was appointed acting president of the University, occupying that position until July 1, 1941. An investigation of Smith's transactions involving the University was immediately undertaken by direction of the University authorities. This investigation disclosed the transactions by Smith with the Hibernia Bank and the Bank of Commerce of which the University authorities had no previous knowledge and from which the University derived no benefit whatsoever.

The purported resolution, a copy of which was presented by Smith to Hibernia

Bank, had not been adopted by the Board of Supervisors of Louisiana State University and is not contained in the minutes of the Board. The document was prepared by Smith some time after the meeting of the Board held on May 29, 1939. The credit of the $100,000, representing the check of Hibernia Bank which the Bank of Commerce entered in the account of Louisiana State University, has never been treated as a part of the funds of the University, which has not, and does' not, make any claim to the credit. As soon as the transactions entered into by Smith with Hibernia Bank and Bank of Commerce were made known to the University authorities, they promptly repudiated them— the loan effected by Smith with Hibernia Bank and the deposit by Smith of the proceeds of the loan in the Bank of Commerce. Both banks were promptly notified that the authorities of the University regarded the transactions as invalid and not binding on the University. After some correspondence between their officers in which the Hibernia Bank asserted and the Bank of Commerce denied the latter's liability on its guaranty of the endorsement on the check of Hibernia Bank, this suit was instituted. Neither of the parties litigant has made the Louisiana State University a party to the suit.

◼ The history of the guaranty of endorsements by banks is set forth and the scope and effect of such endorsements are pointed out by Carl Zollmann in his comprehensive treatise on the law of Banks and Banking. Vol. 8, Perm.Ed., § 5631, p. 417. At page 418 of the same volume and section, the author announces the rule under which the banking business of the country is now carried on as follows: "A guaranty of prior indorsements is now universally required by clearing house rules." The New Orleans Clearing House Association is operating under the rule. Section 9 of Rule 4 of its Rules and Regulations. Commenting upon the scope and effect of such guaranty, Zollmann, in § 5636, announces the further rule of universal application, to-wit: "If such guaranty contributes to or wholly causes the final payment of the check by the drawee, the latter therefore is entitled to relief against the guarantor where an indorsement in fact is a forgery or is unauthorized."

By issuing its cashier's check for $100,000 to the order of the Louisiana State University, Hibernia Bank became both the drawer and drawee of the instrument. Hibernia Bank was not required to know the signature of the payee of the check, Louisiana State University, which was not one of its depositors. In honoring its cashier's check, Hibernia Bank wholly relied on the guaranty of the payee's endorsement in compliance with the Clearing House Rules. Hibernia Bank was justified in the belief that the Bank of Commerce, in presenting the cashier's check for payment purporting to be endorsed by the payee who was not one of Hibernia Bank's depositors, had, by the usual and proper investigation, satisfied itself of the authenticity of the payee's endorsement. The endorsement of the Bank of Commerce warranted the genuineness of what pur-

ported to be the endorsement of Louisiana State University, the payee designated in the check, and that the Bank of Commerce was authorized to collect the proceeds thereof.

■ From which it is clear that the burden is upon the Bank of Commerce, and not upon Hibernia Bank, to show that it was authorized to collect the amount of the check drawn by Hibernia Bank to the order of Louisiana State University.

Although the Louisiana State University has not been made a party to this suit, it appears to be conceded by the parties litigant that the University has repudiated the transactions which have resulted in this lawsuit. It is admitted the position of the University is that the loan obtained by Smith from Hibernia Bank, the endorsement of the check in its name, the deposit of the proceeds of the check in its account in the Bank of Commerce were unauthorized, and that the University received no benefit from the proceeds of the check to which it makes no claim whatsoever.

We are satisfied from our examination of the record that the resolution, presented by Smith to Hibernia Bank and which he represented was adopted by the Board of Supervisors of the University, was not, as a matter of fact, adopted by the Board, but was dictated by Smith to his secretary several days after the meeting of the Board was adjourned. Obviously, therefore, Smith was not authorized to make the loan with Hibernia Bank by virtue of the spurious resolution he presented to the

Bank. Nor do we find that Smith was authorized to make the loan by the so-called Hoffpauir resolution which appears in the minutes of the meeting of the Board of Supervisors of the University held on May 29, 1939, or by the so-called Pratt resolution which does not appear in the minutes at all.

The testimony abundantly shows that the Hoffpauir resolution, as offered at the meeting of the Board of Supervisors of the University, related exclusively to the financing of the building program of fraternity houses and the Pan Hellenic House and that those portions of the resolution relating to the borrowing of funds for the ordinary operation of the University during the summer and early fall months of the session of 1939 and 1940 were prepared by Smith and added to the minutes several days after the adjournment of the meeting.

Pretermitting the contention of Hibernia Bank that the so-called Pratt resolution can not be considered because it does not appear in the minute book of the Board of Supervisors of the University, the testimony shows that the resolution as prepared by Pratt merely authorized Smith to make such financial arrangements with the banks as might be necessary to carry the University through the months of July, August and September, when the University's appropriations would not be available. Several days later Smith dictated certain additions to the resolution, the effect of which was to somewhat extend his authority in reference to the financial arrangements he was authorized to make

with the banks. The so-called Pratt resolution, as stated, is not contained in the minutes and the present authorities of the University take the position that the resolution was not in fact offered by Pratt and adopted by the Board of Supervisors. There is a sharp conflict of testimony on this point. It is clear from what we have said that no authority was vested in Smith by virtue of the portions of the Hoffpauir resolution which he prepared after the adjournment of the meeting and caused to be inserted in the minutes. Even if the Pratt resolution, as originally prepared, can be considered notwithstanding its non-recordation in the minutes and the doubt which arises as to its actual adoption, it gave Smith the authority only to make such financial arrangements with the banks as might be necessary to carry the University through the months of July, August and September. The resolution did not authorize Smith to borrow any specific sum, from any specific bank, to execute a note on behalf of the University, or to endorse the check and deposit the proceeds of the loan. The amount to be borrowed is not stated, nor are the terms and conditions of the loan stipulated. It seems to be plain that Smith, under the terms of the Pratt resolution, as originally prepared, was not vested with the authority to borrow any specific sum from any specific bank and to endorse the check and to deposit the proceeds of the loan for account of the University. Moreover, in obtaining the loan from Hibernia Bank, Smith did not pretend that he was authorized to do so by either the so-called Hoffpauir resolution or by the so-called Pratt resolution but pretended that he was acting under the authority of another resolution which he represented was adopted at the same meeting of the Board of Supervisors of the Louisiana State University, which, in point of fact, was not adopted at that meeting, or at any other meeting held by the Board.

If, under the facts disclosed by the record, it can be said that the Hibernia Bank was guilty of some negligence in its dealings with Smith, it can also be said that its negligence was in a measure superinduced by the greater negligence of the Bank of Commerce in guaranteeing the purported endorsement of the Louisiana State University, the payee designated in the check, which was calculated to lull the Hibernia Bank into a sense of security in reliance upon the guaranty of the Bank of Commerce.

It is conceded by the parties that the evidence fails to show that Smith was specifically authorized by any resolution of the Board of Supervisors of Louisiana State University to open bank accounts, deposit checks and to direct the distribution of the funds of the University. The Bank of Commerce, however, takes the position that while the authority to do those things was not contained in any formal resolution, it was conferred absolutely upon Smith by the action, or inaction, of the Board of Supervisors. Bank of Commerce takes the further position that the course of dealings with Smith, representing Louisiana State University, with the Bank of Commerce from February 3, 1937,

to June 14, 1939, established Smith's authority to endorse and deposit the check of Hibernia Bank in the Bank of Commerce so that the Bank of Commerce became the owner of the check with the right to collect the amount of the check.

A great deal of evidence was offered by the parties in connection with the positions taken by the Bank of Commerce. Since Louisiana State University is not a party to this litigation, it is manifestly impossible for the court to adjudicate upon the validity of the ultimate claims, if any, the plaintiff and the defendant banks may have against the University. For the purpose of this litigation it suffices to say that the authorities presently in charge of the affairs of Louisiana State University have repudiated the transactions from their inception. They contend that Smith was not either expressly or impliedly authorized to make the loan from Hibernia Bank, to endorse its cashier's check, and to deposit the proceeds of the check in the Bank of Commerce. They point out, as shown by the evidence, that the Bank of Commerce was apprised by a letter signed by Smith himself that C. G. Johnson, auditor of the University, was the person authorized to sign the checks for the University's account.

The evidence, including its own records, shows that the Bank of Commerce was fully advised that, except in a few specific instances, Johnson, the auditor, and not Smith, the president, was empowered to sign checks, vouchers and other documents for the proper conduct of the business of the University. From which it is argued

with much force on behalf of the Hibernia Bank that there is no substance in the argument made on behalf of the Bank of Commerce that Smith's endorsement and deposit of the check of Hibernia Bank must be presumed to be valid, since no other person had been authorized to endorse or deposit the check. Counsel for Hibernia Bank say that, in advancing the argument, counsel for Bank of Commerce are making a deduction based on an erroneous assumption of facts and are running counter to the Bank's own records.

Smith's action in endorsing the check of Hibernia Bank in the name of Louisiana State University and depositing it in the Bank of Commerce, in the name of the University, was not of itself binding upon the University. The evidence shows that no person connected with the University, except Smith, knew of the deposit in the Bank of Commerce until sometime after it was made. At that time Smith had left the State. When the authorities then in charge of the affairs of the University learned of the deposit, they promptly repudiated it and, under the direction of its acting president and through its auditor, the University drew out of the Bank of Commerce the small balance then credited to its account before the alleged unauthorized and unratified deposit was made.

■ The universal rule of law is that the mere deposit of money in a bank by a third person to the credit of another does not show ownership in the latter person in the absence of a further showing of acceptance or presumption of acceptance.

■ The deposit of a check or money in a bank creates the relation of debtor and creditor and that relation is a voluntary one which can be established only by contract or by the will of the depositor. This rule, based on universal jurisprudence, is set forth in 3 Ruling Case Law, Banks, sec. 183, p. 556, thus: "Ordinarily, depositing money in a bank creates between the bank and the person credited therewith the relation of debtor and creditor. It is a contract relation which cannot be created without the consent or acquiescence of both parties. The relation cannot be created by a third person, without authority express or implied, in that regard, depositing in a bank money to the credit of another. Such a deposit is not binding upon the latter unless, with knowledge of the fact, he consents thereto or acquiesces therein, or by his conduct becomes estopped to deny the authority to make the deposit."

■ It is also the universal rule of law that the president of a corporation, by virtue of his office, does not have the power to endorse checks, drafts, notes and other obligations payable to the corporation. This rule is stated in Brady on Bank Checks, 2d Edition, sec. 169, pp. 268–269: "While it is customary for some official, or employee, of a corporation to be authorized to indorse in some form checks payable to the corporation, the mere fact that a person is an officer of a corporation does not give him the power to indorse and transfer checks payable to the Company's order. It has been held, for instance, that neither the president, secretary, general manager, nor cashier of a corporation has inherent authority, that is authority merely by virtue of the office which he holds, to indorse checks payable to the corporation."

■ The fact that, as shown by the evidence, Smith was given specific authority by special resolutions adopted by the Board of Supervisors to borrow money for account of the University for specific purposes did not constitute him the financial agent of the University for all purposes and vest in him general authority to sign or endorse checks of the University. It does indicate, however, that Smith was not authorized to borrow money for account of the University unless expressly empowered to do so by a resolution of the Board of Supervisors. Nor did the fact that the check of the Hibernia Bank was deposited in the Bank of Commerce, credited to the account of the University in that institution, and reflected in the bank balance of the University at the close of business on the date of the deposit constitute a ratification on the part of the University of the endorsement and the deposit. The action of the Bank of Commerce in entering the credit in the account of the University did not validate the endorsement. Nor did the reflection in the bank balance of the University validate the unauthorized deposit or make the University the owner of the money. If the University had received the proceeds of the check of Hibernia Bank, or had availed itself in any way of the deposit of the proceeds, or had recognized the deposit in any manner, those acts might be urged as constituting a ratification by the University of the act

of Smith in making the endorsement and the act of Bank of Commerce in entering the credit to the University's account. But none of those things occurred. As soon as the facts came to the knowledge of the authorities of the University, they promptly repudiated Smith's endorsement of the check of Hibernia Bank and the crediting of the proceeds of the check to the University on the books of the Bank of Commerce.

When the Hibernia Bank issued its cashier's check, it took the precaution of making it payable to the order of the Louisiana State University, and that fact alone presupposes that the check would be validly endorsed and deposited by some one authorized to do so. The guaranty by the Bank of the endorsement made by Smith in the name of the University, we think, meant, and was intended to mean, that the University would be benefitted by the deposit in the Bank of Commerce; otherwise the guaranty of the endorsement by the Bank of Commerce was valueless.

The question as to whether Hibernia Bank or the Bank of Commerce must bear the loss of $100,000, which is impending as the result of the transactions under review, must be resolved in favor of the Hibernia Bank.

It is clear that Hibernia Bank should not be charged with the loss since the loss can not be ascribed to its action in making the loan and issuing its cashier's check. Hibernia Bank can suffer no loss by virtue of the payment of the check, because it paid the amount of the check only upon the guaranty by Bank of Commerce of the endorsement of Smith purporting to act for the Louisiana State University, the payee designated in the check.

As we have hereinabove remarked, Hibernia Bank took the precaution of making its cashier's check payable to the order of Louisiana State University itself. And no loss could occur to anyone if the proceeds of the check had gone to the University. But the money did not go to the University. It went to the Bank of Commerce upon the unauthorized endorsement by Smith whereby he undertook to transfer title to the Bank of Commerce, so that that bank was enabled by virtue of its own guaranty to collect the proceeds of the check from Hibernia Bank.

Hibernia Bank honored its cashier's check relying upon the guaranty of the Bank of Commerce which was endorsed on the instrument in accordance with the Rules of the Clearing House Association of which both banks were members.

A case in which the issue raised and determined was substantially like the issue involved in this case is City Bank v. Hamilton National Bank, 71 App.D.C. 225, 108 F.2d 588, decided by the United States Court of Appeals for the District of Columbia. In that case the court held, as shown by paragraph three of the syllabus, that: "Where plaintiff bank had discounted notes signed by husband and purportedly signed by wife, and had issued a cashier's check payable to husband and wife, husband died before paying entire debt, and wife declined to pay balance be-

cause her purported signatures on note and cashier's checks were forgeries, defendant bank which guaranteed the indorsement on the checks and collected amount of the checks was liable to plaintiff bank for balance of indebtedness."

It appears that the Hamilton National Bank sued the City Bank to recover the loss resulting from the forgery of the endorsements of the payee designated in certain cashier's checks drawn by the Hamilton National Bank, which endorsements were guaranteed by the City Bank. The suit was defended by the City Bank on the ground that the loss occurred not by reason of the collection by the City Bank of the amount of the cashier's checks of the Hamilton Bank, but resulted from the loan which had been made by the Hamilton Bank on promissory notes containing forged signatures of one of the makers. The City Bank took the position that in guaranteeing the endorsements on the cashier's checks, it did nothing to lessen the value of the promissory notes; that, in fact, it paid the amounts called for by the cashier's checks to the person the Hamilton Bank intended should receive the proceeds of the checks. The court, however, rejected this contention, holding that the loss suffered by the Hamilton Bank was not due to its loan but was due to the payment of its checks, which payment it had made only by virtue of the guaranty of the endorsements thereon by the City Bank. This is what the court said:

"Hamilton Bank, in issuing the checks, made them payable to both husband and wife and thereby indicated that they were the persons intended to receive the proceeds. It parted with none of its money when it accepted the notes. Its loss occurred when it paid the checks upon the guaranty of City Bank of the validity of the indorsements of Bernice Berman. It thus appears, that while Hamilton Bank was imposed upon by a forger, and on the faith of the forged notes gave him its checks payable to himself and his wife, City Bank was imposed on by the forger when he obtained its money on his own genuine indorsements and the forged indorsements of his wife. The loss sued on occurred as the result of reliance by Hamilton Bank on the guaranty of City Bank that the indorsements were valid. In this aspect, City Bank received from Hamilton Bank money to which it was not entitled. * * * The rule in these circumstances is that the bank which has drawn the cashier's check on itself may recover from the collecting bank when the indorsement has been forged."

As the court found there the Hamilton Bank "parted with none of its money when it accepted the notes", but that "its loss occurred when it paid the checks upon the guaranty of City Bank of the validity of the indorsements of Bernice Berman", so we find here that the Hibernia Bank parted with none of its money when it accepted the note of Louisiana State University, but that its loss occurred when it paid its check upon the guaranty of Bank of Commerce of the validity of the University's endorsement by Smith. If it had not been for this guaranty, in accordance with the rules of the New Orleans Clearing House,

the Hibernia Bank would not have paid its cashier's check at all. And it would not have been out any money if it had not paid its own check upon the guaranty of the Bank of Commerce. The mere fact that Hibernia Bank accepted the note of the University would not have occasioned the bank any loss. The Hibernia Bank's loss occurred when it paid out its $100,000; and it did not pay out this $100,000 until it paid it to the Bank of Commerce upon its guaranty of the payee's endorsement.

The decision in the Hamilton Bank case announces a sound principle of law and we know of no reason why the principle should not be applied and made effective in determining the issues involved in this case.

When the Bank of Commerce, under its guaranty of what purported to be the endorsement of Louisiana State University, the payee, collected $100,000 from the Hibernia Bank on its cashier's check, the collection was made for its own account and not for the account of the University. The Bank of Commerce became the owner of the funds which were commingled with other funds of the bank. So much was this the case that if the funds are lost, stolen, destroyed, or become worthless, the loss must be borne by Bank of Commerce, even though it be free from negligence or fault. 7 Am.Jur., Banks, sec. 444, pp. 313–315.

The only way in which Bank of Commerce could thereupon become the debtor of the Louisiana State University was either because the University authorized the deposit in the first instance or ratified it in the second instance. The University did neither of these things.

The truth of the matter is that it is not Louisiana State University which has received and is now in possession of the $100,000 belonging to the Hibernia Bank. It is the Bank of Commerce which has received and is now in possession, or should be in possession, of the money. The money used by the Bank of Commerce in making the payment of $100,000 to Fenner & Beane was not the money of Louisiana State University, but it was the bank's money. If any loss results from this payment, it must be borne by the Bank of Commerce and not by Hibernia Bank. The record, therefore, presents a situation in which the Bank of Commerce is in possession, or should be in possession, of the $100,000 which it collected from Hibernia Bank upon the faith of its guaranty of Smith's endorsement of the Hibernia Bank's check payable to the order of Louisiana State University.

By its act of collecting the amount of the cashier's check of Hibernia Bank without being authorized to do so by Louisiana State University, and the repudiation by the University of the deposit of the proceeds to its credit, Bank of Commerce has received from Hibernia Bank $100,000 which is not claimed by anyone except Hibernia Bank.

Since the University denies the right of Smith to make the endorsement or to deposit the check and does not claim, but, on the contrary, disclaims any right to the proceeds of the check, the necessary re-

sult is that the Bank of Commerce should be made to return the $100,000 belonging to the Hibernia Bank; otherwise, Bank of Commerce is in the position of enriching itself at the expense of Hibernia Bank.

For the reasons assigned, the judgment appealed from is annulled, and it is now ordered that there be judgment in favor of the plaintiff, Hibernia National Bank in New Orleans and against the defendant, National Bank of Commerce in New Orleans, in the full sum of $100,000 with legal interest thereon from judicial demand, and all costs of suit.