292 So.2d 297 (1974)
Emory L. GRAVES, d/b/a Emory L. Graves Realty Co.
v.
PELICAN DOWNS, INC., et al.
No. 9683.
Court of Appeal of Louisiana, First Circuit.
February 11, 1974.
Gerard H. Schreiber, New Orleans, for appellant.
Gus A. Fritchie, Jr., Slidell, for Belvedere, Inc.
Richard P. Massony, Covington, for Lawrence F. D'Antoni and James R. Lawrence.
Before LANDRY, ELLIS and PICKETT, JJ.
LANDRY, Judge.
Plaintiff (Graves) appeals from judgment denying his claim for a 7% realtor's commission allegedly earned by his negotiation of an agreement between Belvedere, Inc. (Seller) and Pelican Downs, Inc. (Buyer) for the purchase and sale of a tract of land owned by Seller. We affirm.
Basically the dispute concerns an interpretation of the terms of an option to purchase entered into between Seller and Buyer and the validity and interpretation of an alleged subsequent agreement to buy and sell.
Buyer was interested in acquiring from Seller a tract of land situated in St. Tammany Parish for use as a race track. Through the efforts of Graves, an option to purchase was entered into between Buyer and Seller on July 15, 1970. The instrument granted Buyer the right to purchase, within 45 days, a 135.64 acre tract owned *298 by Seller for the sum of $176,800. As consideration for the option, Buyer paid $1,000.00 Cash. The agreement also provided that if the cash sale was "actually passed", the $1,000.00 paid would be credited to the purchase price. It also stated that the remaining purchase price would be paid $47,000.00 cash at the time of sale, and the balance in quarterly installments bearing 7% interest annually. Included in the option was the following provision:
"If the sale is consumated (sic) Seller agrees to pay its agent's commission of seven (7%) percent."
The option was signed on Seller's behalf by its authorized agent, Dan Barley. It was witnessed by Graves.
On August 20, 1970, Buyer corporation adopted a resolution exercising its option to purchase Seller's property. The resolution did not, however, authorize any particular officer to act thereon in Buyer's behalf.
In addition to relying on the above mentioned option, Graves relies upon an undated Agreement to Purchase or Sell executed on a form entitled "Standard Form Real Estate Board, St. Tammany Parish". This latter instrument is signed by Lawrence F. D'Antoni and James R. Lawrence, offerors, individually. It offers to buy 131.97 acres of land for the sum of $172,000.00. It provides for payment of a $1,000.00 deposit, and states that the price would be paid $46,000.00 Cash and the balance in 16 quarterly installments bearing 7% interest annually. The offer is accepted by Dan Barley, individually. This agreement contains the following significant language:
"If this offer is accepted, seller agrees to pay the agent's commission of seven percentum which commission is earned by agent when this agreement is signed by both parties and when the mortgage loan, if any, has been secured."
It is shown that after the initial option was signed, the parties discovered that approximately four acres had been sold off the tract intended to be purchased by Pelican. On October 29, 1970, Seller, Buyer, Graves and other interested parties met in Slidell, Louisiana, to pass the proposed sale before Robert A. Anderson, Notary Public. Mr. Anderson had previously prepared the required act of sale with mortgage together with the mortgage note so that the papers need only be signed to complete the transfer. It developed, however, that due to supplemental agreements concerning which Mr. Anderson had no knowledge (and which were unrelated to the difference in acreage), redrafting of the papers was necessary. Although the record is not entirely clear, it appears redrafting was necessitated by a misunderstanding as to the application of the $1,000.00 paid for the option. After redrafting the documents in the presence of the parties, the papers were signed, witnessed and notarized. Pelican then presented its uncertified check in payment of the down payment of $46,000.00, and the additional sum of $192.45 representing certain closing and escrow costs. Seller delined to deliver the deed to Buyer because the check was not certified. An escrow agreement was decided upon as follows: The Notary retained the deed and deposited Buyer's check to his account for collection; on clearance of Buyer's check, Notary would issue his check for $46,000.00 to Seller in payment of the initial amount due on the sale price; Notary would then deliver the deed to Buyer; Seller's attorney, Gus A. Fritchie, Jr., retained the note for delivery to his client upon release of the deed to Buyer; Seller paid Notary the $1,000.00 paid for the option, which amount was to be credited to the purchase price; this sum was placed in the Notary's escrow account to be returned to Seller when Buyer's check was honored. As the reader may already have suspected, Buyer's check bounced. Consultation between Mr. Anderson and Mr. Fritchie resulted in a return of Buyer's note to Anderson, who then defaced the credit deed and note pursuant to an understanding between the parties in the event Buyer's check should be dishonored by the drawee *299 bank. Anderson also returned to Seller the $1,000.00 deposited at the time of the attempted transfer. Appellant did not receive a commission.
Graves sought recovery from Belvedere and Pelican, and alternatively, from D'Antoni and Lawrence. Default judgment was rendered in Graves' favor against Pelican from which decree Pelican did not appeal. Graves' testimony clearly indicates he had no intention of holding D'Antoni and Lawrence personally. The dismissal of Graves' claims against said individuals was not argued before this court either in brief or oral argument. We consider these claims abandoned and treat the appeal solely as an appeal of the rejection of plaintiff's claim against Belvedere.
Appellant contends he is entitled to his commission under the terms of the undated offer to purchase. He so argues on the ground the document provides the commission was earned when the offer was accepted and the agreement signed by the parties and when the mortgage, if any, was secured. Appellant further contends that since Seller agreed to carry the mortgage, all the terms of this agreement were met. He also asserts that the agreement was signed by Barley as agent of Belvedere consequently Belvedere is liable for the commission. Alternatively, Appellant claims he is entitled to a commission pursuant to the initial option which Belvedere admits was signed on its behalf by Barley. Graves maintains the option called for payment of a commission upon consummation of the sale, and argues the sale was consummated when it was signed before the Notary, Anderson.
Belvedere concedes that Barley signed the July 15, 1970 option as Belvedere's agent. However, Belvedere denies any knowledge of the undated Agreement to Purchase or Sell signed by Barley and contends Barley was not authorized to sign the latter agreement on Belvedere's behalf. On this basis, Belvedere contends the latter agreement is not binding upon it and Graves' right to a commission, if any, must stem from the option agreement. In this latter respect, Belvedere contends Graves did not earn a commission because the sale was not consummated as required by the express terms of the option. Belvedere's position is that consummation means a completed transaction pursuant to which the vendor receives the price, and title is delivered to the purchaser.
In effect, the trial court rejected Appellant's claim under the Agreement to Purchase or Sell on the ground there was no showing that Barley executed the agreement as Belvedere's agent. We are in complete accord with this apparent conclusion. Said document is signed by Barley purely in his individual capacity. Nothing in the document indicates that Barley was signing other than as an individual. His signature is not followed or qualified by the word "Agent", or any other term that would indicate his signing in a representative capacity. Graves' testimony is to the effect he assumed Barley signed as Belvedere's agent. We note that the language of the Agreement to Purchase or Sell is much more favorable to Graves than that in the option insofar as concerns the circumstances under which Graves' commission was deemed earned.
It is settled that a party seeking to enforce a contract against a corporation is required to establish that the officer or agent with whom he contracted was in fact authorized to bind the corporation, especially when the action of the officer is not normally within his powers. Buckley v. Woodlawn Development Corporation, 233 La. 662, 98 So.2d 92. Appellant offered no evidence whatsoever concerning Barley's alleged authority to bind the corporation. Since the terms of the Agreement to Purchase or Sell materially changed those of the prior option, it was incumbent on Graves to ascertain that Barley possessed authority to make such a change. The principal, Belvedere, has denied such authority; appellant has failed to establish that such authority existed. We conclude *300 this agreement is not binding upon Belvedere.
Appellant relies upon Landry & Passman Realty, Inc. v. Keen, et ux., La.App., 170 So.2d 775, as authority for holding Belvedere liable for his commission pursuant to the option. It is urged that Keen, above, is authority for the rule that a Realtor's commission is earned: (1) When vendor and vendee have signed an agreement to purchase; (2) when adequate financing has been secured provided the agreement to purchase is conditioned upon such an eventuality, and (3) when an agreement to purchase becomes enforceable and subject to specific performance.
Keen is inapplicable herein because it is factually inapposite. In Keen, the contract did not specify when the Realtor's commission would be considered earned. The court was, therefore, called upon to decide when a commission was earned in the absence of contractual provisions so providing. Here the contract recites the conditions under which Appellant's commission would be due.
A contract is the law between the parties and its provisions will be judicially enforced unless shown to be contra bonos mores or violative of an express law. Grace v. Morales, La.App., 210 So.2d 60. The issue in this case, therefore, is whether the sale was consummated within the meaning of the word "consummated" as intended by the parties.
The words of a contract are to be interpreted according to their ordinary and common meaning. LSA-C.C. art. 1964. The option binds Seller to pay a commission "if the sale is consumated (sic)". The verb consummate means, inter alia, to finish, complete or bring to the highest point or degree. See Webster's Third New International Dictionary, 1963 Edition. Under the circumstances of this case, we find the parties intended the commission be considered earned when Seller received payment, namely, cash receipt of the down payment, receipt of Buyer's note for the balance due, and the passage of title to Buyer. Seller declined to accept Buyer's personal, uncertified check for the down payment. All parties agreed the down payment would not be considered paid until Buyer's check was honored, and the Notary issued Seller the Notary's check in payment of the cash payment required. Additionally, it is conceded the Notary was directed to retain the deed for delivery to Buyer only after Buyer's check had been honored. It is also shown that Appellant was present when this arrangement was made; that he fully understood the arrangement, and that he at least tacitly agreed thereto. Finally, it is shown that after Buyer's check was dishonored, Appellant apparently made further attempts to bring the parties together to complete the transaction. Appellant thanked Seller for granting Buyer an extension of option time, and also inquired of Buyer requesting that Appellant be advised when Buyer proposed to take title. We conclude that all concerned, including Appellant, did not consider the sale consummated on October 29, 1970.
The judgment of the trial court is affirmed at Appellant's cost.
Affirmed.