**MARSH INVESTMENT CORPORATION,**
**Plaintiff,**

**v.**

**John A. LANGFORD, Pontchartrain State Bank, William M. Justice, Clerk of Court and Ex-Officio Recorder of Mortgages for the Parish of Jefferson, Charles J. Oubre, Clerk of Court and Ex-Officio Recorder of Mortgages for the Parish of St. Charles, Defendants.**

Civ. A. No. 79–2020.

United States District Court,
E. D. Louisiana.

June 3, 1980.

Moise S. Steeg, Jr., Robert M. Steeg, New Orleans, La., for plaintiff.

Milton E. Brener, New Orleans, La., for defendant and third party defendant John A. Langford and third party defendant Langford Land Co.

Max Nathan, Jr., Robert Lowe, New Orleans, La., for defendant Pontchartrain State Bank.

Marian Mayer Berkett, Matt J. Farley, New Orleans, La., Alfred J. Morgan, Jr., New York City, for third party defendant Crump London Underwriters, Inc.

Don M. Richard, New Orleans, La., for third party defendant Eunice Langford.

## MEMORANDUM OPINION

CASSIBRY, District Judge:

■ This court, as a preliminary matter, takes judicial notice that defendant John A. Langford has filed a petition in voluntary bankruptcy, pending as proceeding number 80–00015 in the United States Bankruptcy Court for the Eastern District of Louisiana. Pursuant to 11 U.S.C. Section 362, continuation of all proceedings against the bankrupt are automatically stayed. 11 U.S.C.A. § 362 (1979). Plaintiff has voluntarily withdrawn its motion for summary judgment as against John A. Langford, and it is accordingly dismissed without prejudice.

This suit was filed by Marsh Investment Corporation ("Marsh") against John A. Langford and Pontchartrain State Bank (the "Bank") to set aside two mortgages filed of record against certain property owned by plaintiff. The subject property is located in Jefferson and St. Charles Parishes, and the respective recorders of mortgages for the two parishes have been joined in the suit. The mortgages were executed by Langford, purportedly acting as agent for Marsh, in favor of the Bank. Because summary judgment can appropriately be entered against the Bank and the recorders without participation by Langford, I originally denied the Bank's motion to continue this motion until Langford could be deposed. However, because these reasons were to follow my decision on summary judgment entered March 4, 1980, I agreed to reconsider my decision and delay issuance of these reasons until I considered Langford's testimony. I adhere to my previous decision for the following reasons.

Most of the facts surrounding the transactions that led to the execution of the mortgages are uncontroverted. Langford was heavily indebted to the Bank, and several of his loans with the Bank were delinquent. Langford proposed that the Bank refinance his loans, apparently in connection with a proposed purchase of the Colonial Bank.[1] After some negotiations, Langford and the Bank agreed to refinance the loans and secure them by a collateral mortgage on property owned by the Marsh Investment Corporation.

Marsh is a Louisiana corporation, formed by Mr. Carlos Marcello for the purpose of investing in real estate. Most of the stock in the corporation is owned by the family and friends of Carlos Marcello. No person or entity owns a controlling percentage of Marsh's stock.[2] Langford was a friend of Carlos Marcello and frequented the offices of Marsh. The property that was to be subject to the mortgage is owned by Marsh and is located in Jefferson and St. Charles Parishes.

Two loans were in fact made to Langford to refinance his debts, one of $1,000,000.00 and one of $200,000.00. To secure the loans, two collateral mortgages were placed on

---

1. There is some question as to the participation of Langford's mother, Eunice K. Bristow, in the loan transactions. Her precise role in the transactions is not material to this decision.

2. Carlos Marcello personally owns 130,000 shares out of the 1,000,000 shares issued, or 13%.

the Marsh property, one dated June 18, 1977 and one dated February 14, 1978. Before the deal was agreed upon, however, the Bank required that Langford meet the requirements of its attorneys.

The Bank's attorneys asked that Langford present them with a corporate resolution from Marsh and approval of its shareholders concerning the pending transactions. The attorneys also required that Langford submit an opinion from his attorneys as to the validity of the loans.

A corporate resolution purporting to authorize Langford to consummate the loan transactions as agent for Marsh was appended to each mortgage. Each resolution was certified by a James Perez as secretary of Marsh. In addition, unanimous consent of the shareholders of Marsh was apparently procured, and papers documenting the same deposited with Langford's attorneys. The first document was certified under the signature of James Perez to be a list of the stockholders of Marsh. Several names were lined through and what appear to be James Perez' initials placed in the margin next to them. A "consent of shareholder" form accompanies the list for each name not crossed off the list. James Perez signed the consents for two corporate shareholders as president of the corporations.

The Bank did not see the unanimous consents or the shareholder list. They were deposited with Langford's attorneys, to be released only in the event of litigation. Langford's attorneys prepared an opinion describing the documents placed in escrow and sent the opinion to the Bank. The opinion is carefully worded and avoids attesting to the authenticity of any of the documents or giving an opinion as to the validity of the loan. It concludes:

> I have not reviewed or even seen any charter, by-laws, stock books or any other documents of this corporation, nor have I conducted any investigation of this corporation whatsoever, even as to its existence. I make no representation or war-

ranty, or give any opinion, that these people are in fact shareholders of Marsh Investment Corporation, or, if they are that they are the same people who signed these consent forms.

The Bank apparently made no further investigation of Langford's authority to mortgage Marsh's property. The Bank completed the loan transactions, keeping the greater portion of the funds to extinguish the existing delinquent debts, and collateral mortgages were executed on Marsh's property.

Unfortunately, all of the documents purportedly authorizing Langford to act as agent for Marsh were forgeries. If James Perez exists at all, no one acknowledges that he is known to him. The president, vice-president, and secretary of Marsh have all submitted affidavits attesting that James Perez is not known to any of them, that he was never the secretary of Marsh Investment Corporation, and that he was never empowered to act on its behalf. The secretary of Marsh attests that no resolution authorizing Langford to encumber any property owned by Marsh was ever approved by the corporation or its shareholders, and the purported list of stockholders of Marsh is a false and incorrect list.

Each of the shareholders whose "consent of shareholder" was attached to the false list has denied by affidavit that he signed the consent form. The presidents of the two corporate shareholders have denied that James Perez was ever the president of the respective corporations or that he was ever empowered to act on their behalf. Each of the true stockholders of Marsh, according to the list submitted with the affidavit of Marsh's secretary, has denied either by affidavit or by sworn written interrogatory that he or she has ever heard of James Perez or consented in any manner to authorize Langford or anyone else to encumber Marsh's property. Marsh, of course, received none of the proceeds of the loans.[3]

---

3. The Bank's opposition to Marsh's reply memorandum claims that insufficient evidence has been received to determine whether Marsh has received any proceeds of the loans. The Bank

has submitted no affidavits in support of this position to counter those of Marsh's officers, all of whom attest that no benefits were received from Langford or the Bank.

The Bank has not substantially controverted these facts. It has submitted only the testimony of Langford and his attorney, Mr. Stassi, attempting to raise an issue as to a material fact to avoid summary judgment. As I will discuss later, however, the Bank's contention fails to effectively dispute the critical factual questions and legal issues in the case, i.e., whether the corporation did in fact authorize Langford to execute the mortgages, and whether the Bank discharged its duty to ascertain the authority behind Langford's agency. Because there is no genuine issue as to any material fact, and the facts show that plaintiff is entitled to judgment as a matter of law, I must grant plaintiff's motion for summary judgment. Fed.R.Civ.P. 56; *Stafford v. United States*, 611 F.2d 990 (5th Cir. 1980).

■ Louisiana law[4] is clear that any action taken in the name of a corporation that is unauthorized by the corporation cannot bind the corporation. *Margolis v. Allen Mortgage & Loan Corp.*, 268 So.2d 714 (La. 4th Cir. Ct.App.1972); *Stevens v. Booth Motor Co.*, 9 La.App. 535, 119 So. 725 (2d Cir. 1929). In *Margolis*, for example, the secretary-treasurer of a corporation executed an act of notarial assignment and transfer of a mortgage note owned by the corporation to plaintiff. Plaintiff attempted to foreclose on the mortgage note. The court held that the attempted assignment was of no legal effect, and thus could not be the basis of plaintiff's execution, because the secretary-treasurer had not been authorized to make the transfer by resolution of the corporation's board of directors. In *Stevens*, certain promissory notes ostensibly signed by the corporation's president on behalf of the corporation had in fact been signed by the president's wife, who had no authority to do so. The court held the notes illegal, null, and void, even in the hands of an innocent third party.

■ The affidavits and sworn answers to written interrogatories submitted by plaintiff establish beyond question that Marsh did not in fact authorize Langford, or anyone else, to mortgage its properties. No valid resolution of the corporation was passed, see La.Rev.Stat.Ann. § 12:81 (1969), and no valid unanimous consent of the shareholders was obtained, see La.Rev.Stat. Ann. § 12:76 (1969). Like *Margolis* and *Stevens*, although the resolutions, shareholder list, and consents were ostensibly signed by someone in the name of the corporation and its shareholders, they can be of no legal effect because no valid authority was actually conferred. Consequently, no valid authority was conferred on Langford to act in the name of the corporation, and his acts cannot have had legal effect. On this basis alone I could find that the execution of the mortgages was illegal, null, and void, even if the Bank had been an innocent third party.

■ But even further, Langford himself purported to act for the corporation, not as an officer, director, or controlling shareholder, but merely as an agent. Louisiana law specifically holds:

> [T]he person who deals with a corporation . . . is generally bound to know whether or not the person who presumes to represent the corporation and act in its name is authorized to do so. Our jurisprudence holds additionally that *the person dealing with an agent is put on his guard by the fact of the person's agency alone and deals with him at his own risk. It is his duty to inquire into and ascertain the nature and extent of his powers as an agent and determine whether or not the act or contract about to be consummated comes within the province of his agency and will or will not bind his principal.* [citations omitted].

*Carey Hodges Associates v. Continental Fidelity Corp.*, 264 So.2d 734 (La. 1st Cir. Ct.App.1972) (emphasis added). *See Buckley v. Woodlawn Development Corp.*, 233 La. 662, 98 So.2d 92 (1957); *Graves v. Pelican Downs, Inc.*, 292 So.2d 297 (La. 1st Cir. Ct.App.1974).

---

4. This suit was removed from state court by a third party defendant on the ground of diversity of citizenship. *See* 28 U.S.C. §§ 1441, 1332 (1976). I must decide the case under principles of state law. *Erie R. R. Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938).

In *Carey Hodges Associates v. Continental Fidelity Corp.*, 264 So.2d 734 (La. 1st Cir.Ct.App.1972), plaintiff brought suit to recover fees due for preparation of plans for a race track. The person signing on behalf of the corporation was in reality the promoter of the race track, not an agent or employee of the corporate owner of the track. He had negotiated for his own purposes; he did not have ultimate authority to enter into a contract for preparation of the plans on behalf of the corporation. The court held not only that the promoter did not have authority to bind the corporation, but that the plaintiff had not properly discharged its duty to inquire into the promoter's authority, and therefore was not justified in relying upon his signature.

In this case, the Bank apparently relied heavily on the purported resolutions given to it by Langford. In *Hibernia National Bank v. National Bank of Commerce*, 204 La. 777, 16 So.2d 352 (1943), the court specifically held the Hibernia Bank was negligent to rely on the facial validity of a resolution authorizing the president of Louisiana State University to borrow $100,-000.00. The document, the *Hibernia* court found, had in fact been prepared by the president sometime after the meeting of the Board of Trustees of the University at which it was supposedly adopted. The court relieved the Hibernia Bank from responsibility for the president's embezzlement of the funds only because its negligence was superceded by the negligence of the Bank of Commerce, which negotiated the Hibernia Bank's check under the president's unauthorized endorsement on behalf of the University.

The Pontchartrain Bank in this case was no more justified in relying on the facial validity of resolutions authorizing a stranger to the corporation to act as agent in procuring loans than the Hibernia Bank was in relying on the bona fides of the president of the state's largest university. Even worse, the resolution in *Hibernia* at least authorized the president to procure the loan on behalf of the University, and the Hibernia Bank's check was made out to its order. The resolution in this case purported to allow Langford to mortgage the property of the corporation to secure his *personal* indebtedness. The Bank should have been all the more cautious when faced with the prospect of using corporate property to secure a personal debt, especially the personal debt of a stranger to the corporation. *Cf. Lilliedahl & Mitchel v. Avoyelles Trust & Savings Bank*, 352 So.2d 781 (La. 3d Cir. Ct.App.1977) (applying corporate funds to the personal debt of a corporate officer; Bank must "proceed cautiously . . . especially when large sums of money are involved").

Even the most cursory examination of Marsh's corporate records would have revealed that no James Perez was ever connected with the corporation, and that no resolution authorizing Langford to mortgage the property to secure a loan on his (Langford's) behalf was ever considered by the board. Furthermore, the Bank certainly was not justified in relying on the shareholder list and consents. In the first place, the Bank never insisted on an opportunity to examine the list and consents for itself. If the Bank had done so, the Bank could have easily compared them with Marsh's records to find that they were all false documents. Moreover, the Bank could not have justifiably relied on the opinion by Langford's counsel, Mr. Stassi, which was so qualified that it should have waved a sea of red flags indicating that additional investigation was necessary. It did not even opine on the validity of the list or the consents, much less the loan transaction itself. Mr. Stassi testified at his deposition that he considered it the Bank's responsibility as lender to determine the validity of the resolution and the consents. Like *Carey Hodges* and *Hibernia*, the Bank did not properly discharge its duty to inquire into Langford's authority as agent, and therefore dealt with him at its risk. *See also Credit Alliance Corp. v. Centenary College*, 17 La.App. 368, 136 So. 130 (La. 2d Cir. Ct.App.1931).

The Bank has submitted the depositions of Langford and Stassi purporting to raise an issue of material fact. Langford testified that Carlos Marcello was aware that the mortgages were to be granted prior to

their execution and gave him permission to grant the mortgages on the land owned by Marsh. Langford testified that he had several transactions that Marcello "helped" him with, for which he paid Marcello, including $20,000 around the time of the Marsh transactions. Langford testified that Phillip Smith, now deceased but then attorney for Marsh, furnished him (Langford) with the documents purportedly authorizing the mortgages. As far as Langford was concerned, Marcello owned the properties in question. The Bank also points to statements made by Marcello at his deposition that the board of directors and shareholders of Marsh usually followed his recommendations, including the decision to purchase the land involved in this case. Marcello admits his friendship with Langford but denies that he gave Langford permission to encumber the properties. The Bank contends issues are raised as to Langford's authority to mortgage the properties and as to Carlos Marcello's credibility.

■ On a motion for summary judgment, I must take all facts and inferences in the light most favorable to the opponent of the motion. *United States v. Diebold, Inc.*, 369 U.S. 654, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962). On the other hand, the factual issues raised cannot be irrelevant or spurious. *Bolack v. Underwood*, 340 F.2d 816 (10th Cir. 1965). The opponent of the motion must present a set of facts that supports a viable legal theory which would entitle it, if accepted, to judgment as a matter of law. *Mutual Fund Investors, Inc. v. Putnam Management Co.*, 553 F.2d 620 (9th Cir. 1977); *McGuire v. Columbia Broadcasting System, Inc.*, 399 F.2d 902 (9th Cir. 1968).

Even accepting Langford's statements as true, all they can prove is that Carlos Marcello and/or Phillip Smith perpetrated a conspiracy to defraud Marsh, and used Langford as his or their pawn. But the statements are not probative of the crucial issue in this proceeding, which is whether Marsh can be bound to the mortgages under the circumstances. To hold the corporation to these mortgages, I would have to find that Langford had either actual authority or apparent authority to execute them on behalf of the corporation. *See Lilliedahl & Mitchel v. Avoyelles Trust & Savings Bank*, 352 So.2d 781 (La. 3d Cir. Ct.App.1977).

As I have discussed earlier, it is clear that Langford did not have actual authority to act as agent for Marsh to mortgage its property. The resolutions could not grant *actual* authority because the resolutions were not *actually* authorized by the corporation.

■ Furthermore, even on the facts relied upon by the Bank, Langford could not possibly have been clothed with so-called apparent authority to bind the corporation. In Louisiana:

> Apparent authority is a doctrine created by the courts to protect persons dealing in good faith with *corporate officials* where *the corporation* has taken such action or inaction as to justify a belief that *the official* has acted with authority. The doctrine has two requirements: (1) *The principal* must make some form of manifestation to an innocent *third party*; and (2) The third party must rely reasonably on the purported authority of the agent as a result of the principal's manifestations. [citations omitted].

*Lilliedahl & Mitchel v. Avoyelles Trust & Savings Bank*, 352 So.2d 781, 787 (La. 3d Cir. Ct.App.1977) (emphasis added); *see Analab, Inc. v. Bank of the South*, 271 So.2d 73 (La. 4th Cir. Ct.App.1972). In *Lilliedahl & Mitchel v. Avoyelles Trust & Savings Bank*, 352 So.2d 781 (La. 3d Cir. Ct.App.1977), the president of a corporation acted beyond the general authority granted to him by a resolution of the corporation that allowed him to conduct certain of its business affairs. The court held that a bank could not bind the corporation to his actions because the bank's reliance on his purported authority was unreasonable.

By contrast, in *Analab, Inc. v. Bank of the South*, 271 So.2d 73 (La. 4th Cir. Ct.App. 1972), the bank allowed its president, Mr. Grandbouche, to conduct personal business activities on the bank's premises. Grandbouche requested that plaintiff analyze the gold and silver content of some native ore samples, which he provided to plaintiff's

representative at his office in the bank. Grandbouche failed to inform the plaintiff that the services were to be performed for himself personally or for a third party.

The *Analab* court held that the bank contributed to the circumstances creating the apparent authority by allowing its president, a corporate officer, to conduct his personal activities actively and on a daily basis on the bank's premises. Plaintiff could reasonably have believed that the services were to be performed on behalf of the bank to provide technical information for use in processing a loan application. The court thus held the bank liable to the plaintiff because, through the bank's manifestations and the surrounding circumstances, it was reasonable for plaintiff to believe Grandbouche was acting within his apparent authority as president of the bank.

In this case, the corporation made no manifestation whatsoever to the Bank, *i.e.,* the third party. Langford was in no way connected to the corporation, as an official or otherwise, other than being a friend of Carlos Marcello. His friendship was surely not a manifestation on behalf of Marsh that he was authorized to act on the corporation's behalf. Whatever manifestations Marcello or Smith may have made to Langford as to his authority were apparently not made either by those individuals or by the corporation to the Bank, which is the critical link. (Langford pointedly testified that he merely *presumed* that Marcello had spoken with the Bank officials about the pending transactions because Marcello was friendly with them. The Bank president testified that he did not speak with Marcello about the transactions.) And the false resolutions cannot be used to bootstrap either Langford's "official" agency or a resolution on behalf of Marsh constituting a manifestation because the corporation had nothing to do with the resolutions.

The Bank argues that *Lilliedahl* and other cases cited by plaintiff are inapposite because those cases involved actions by corporate officials beyond powers actually granted by corporate resolution. In this case, it argues, the resolution purported to grant exactly the power that was exercised.

Thus Langford had the "apparent" authority that was authorized on the face of the resolutions.

But "apparently" having authority, in the colloquial sense, is just not the same thing as having legally recognized "apparent" or "inherent" authority. The principles established by *Lilliedahl* are still good law: it is the principal, *i.e.,* the corporation, that must make some manifestation that can reasonably be construed as giving the agent authority. This case is actually worse than *Lilliedahl,* where the person presuming to act in the corporation's name held out the manifestations of the corporation's presidency and its valid general resolution authorizing him to take some actions in the name of the corporation. The invalid resolution on Langford's behalf cannot bind the corporation, no matter what authority it purported to give Langford. *See D'Aubin v. Mauroner-Craddock, Inc.,* 262 La. 350, 263 So.2d 317 (1972); *Hibernia National Bank v. National Bank of Commerce,* 204 La. 777, 16 So.2d 352 (1943).

Even more, it is not even clear that the doctrine of apparent or inherent authority can apply in this case. The Louisiana civil code provides that the power must be express and special for an agent "[t]o incumber [sic] or hypothecate." La. Civ.Code Ann. art. 2997 (West 1952). So it seems that not even Carlos Marcello himself, or any officer of Marsh for that matter, could have validly executed these mortgages, because even though the corporation usually followed Marcello's recommendations, he was not expressly authorized by resolution to take such action in the name of the corporation. Mortgaging the property of a corporation to secure a debt

> is more than an administrative function. Such is not an inherent power of any corporate officer and may only be vested by corporate action either expressed in its charter or by its board of directors in regular proceedings. If this were not true, it is obvious a corporation would be at the mercy of its officers and agents and exposed to financial ruin at all times as a result of their bad judgment, dishonesty, or fraud.

*Credit Alliance v. Centenary College*, 17 La.App. 368, 136 So. 130 (2d Cir. 1931) (head bookkeeper/bursar executed promissory notes for corporation). *See Lilliedahl*, 352 So.2d 781 (applying corporate funds to the personal debt of a corporate officer).

■ The "dispute" as to the credibility of Carlos Marcello cannot create a dispute as to the corporation's actions. Defendant must do more than claim that it can discredit one of plaintiff's witnesses at trial. It must still come forward with evidence which, viewed most favorably to them, would permit an inference that they are entitled to judgment as a matter of law. *See Modern Home Institute, Inc. v. Hartford Accident and Indemnity Co.*, 513 F.2d 102, 110 (2d Cir. 1975). Again, even assuming Langford's testimony is the truth, all it shows is that Carlos Marcello and Phillip Smith were involved in a fraud. There is no dispute that Marsh is the true owner of the land; there is no dispute that the resolutions and shareholder list and consents are false; and these are the material facts.

■ The Louisiana civil code provides that a "[c]onventional mortgage is acquired only by consent of the parties . . . ." La.Civ.Code Ann. art. 3342 (West 1952). Similarly, the law provides that cancellation of mortgages can only be effected by consent of the parties empowered to do so. La.Civ.Code Ann. art. 3371 (West 1952). When a mortgage has been cancelled through error or fraud, the court will order it reinstated. *Davis-Wood Lumber Co. v. DeBrueys*, 200 So.2d 916 (La. 1st Cir. Ct. App.1967); *Gulf South Bank & Trust Co. v. Demarest*, 354 So.2d 695 (La. 4th Cir. Ct. App.1978). Because these mortgages were acquired either through error or through fraud, and not by consent of the corporation, they are illegal, null, and void, and must be extinguished.

The clerk will prepare a judgment consistent with this opinion.