SIMON, Justice.
 

 By this suit plaintiff-appellant seeks the rescission and annulment of a contract of lease for a motion-picture theater and of a sale of motion-picture equipment and damages allegedly incurred in the operation of the leased premises, plus attorney fees, or for the total sum of $8,305.93, with legal interest from date of judicial demand. In an álternative plea, plaintiff-appellant seeks judgment in the sum of $4,475.
 

 Plaintiff alleges that through defendants’ fraudulent representations he was induced into purchasing motion-picture equipment and entering into a contract of lease for a term of five years for the property known as the Isis Theater; that the said false and fraudulent representations related to and concerned the revenues of said theater, this being his principal motive for entering into said contract of lease and venturing into the business of operating a motion-picture theater, and that, relying thereon, he suffered the damages complained of.
 

 By supplemental and amended petition plaintiff alleges that the lessor failed to
 
 *845
 
 cause him to be in a peaceable possession of the premises, the theater having been ordered closed by the fire marshal of the State of Louisiana due to hazardous defects and violations of laws and ordinances pertaining thereto; that the building as rented to him was considered unsafe for occupancy as a motion-picture theater, to the knowledge of lessors, which information was withheld or concealed. He further alleges that the motion-picture equipment purchased by him under separate transfer was useless to him and prays for the rescission of said sale and a reimbursement of the purchase price.
 

 Defendants admit the contract of lease for the rental of the theater property and the sale of said equipment, but in effect generally deny all actionable charges.
 

 On the day of trial it was agreed, by stipulation of counsel, that the contract of lease should be and it was cancelled effective March 3, 19S4, without prejudice to the rights of the parties thereto. Judgment was rendered dismissing plaintiff’s suit, and he has appealed.
 

 The actionable charges of fraud, misrepresentation and induced error necessarily resolve themselves into purely an issue of fact. The record discloses that the defendants herein, owners of the theater property, had rented same to Rex Amusement Company for the rental of $300 per month or 10% of the gross revenues, whichever was the greater. A cancellation • clause contained in said lease provided that should the owner not receive the average of $300 per month for any three consecutive months’ period, either party to the lease could cancel same upon giving a 60-day notice in writing. Upon the parties hereto having availed themselves of the rights of the cancellation clause, the theater property was advertised for rent in the daily press. Having seen the advertisement, plaintiff immediately contacted the owners to negotiate for the rental of the theater. He alleges that the defendants represented to him that their actual rental revenue under the terms of their lease with Rex Amusement Company averaged each month from $600 to $700, based on the gross revenue of the theater which was in excess of $6,000 per month. However, not only is this alleged representation flatly contradicted in all details by defendant, but the testimony of plaintiff miserably fails to sustain his contention but discloses that the defendants informed him that the rental received from the theater under the contract of lease with Rex Amusement Company was inadequate, being then no more than $300, which inadequacy was the reason for its cancellation.
 

 The record further discloses that plaintiff sought and obtained advice and made an independent investigation of the possibility and probability of the box office receipts and revenues of said theater. By his testimony and testimony of witnesses it
 
 *847
 
 is irrefutably shown that plaintiff was cautioned that the theater was not a profitable business venture; that notwithstanding this warning he preferred to “take a gamble”; that his sole .interest was to become engaged in the motion-picture business; and that he believed that with sound management and proper advertisement the gross revenues of the theater could be increased to the desired sum of $6,000 to $7,000 a month. Plaintiff knew that at the time he was negotiating for the rental of this theater the box office receipts and other revenues were inadequate to yield on a percentage basis a rental of $600 or $700 a month, but that in truth and in fact the rental actually being paid by the lessee under the terms of its lease was the minimum of $300 per month.
 

 The record further discloses that the plaintiff was advised by his brother-in-law, one experienced in the operation of motion-picture theaters, that the Isis Theater was not a good business venture and that it would not produce the revenue anticipated by plaintiff. Plaintiff’s business financier, from whom he borrowed $3,500 for the purchase of the equipment, advised him against entering into this particular business venture, on the basis that the Isis Theater would not prove profitable. Mr. Bluestone, a theater representative or buyer and booker for theaters with 15 years’ experience, informed him that it was generally “known in the trade” that the Isis was not doing satisfactory business and also advised him against entering into the lease of the theater for its operation. Plaintiff was totally indifferent to and unaffected by all this advice given to him and disregarded it, being confident that with good management and advertisement he could successfully operate said theater.
 

 Plaintiff further complains that he was not held in peaceable possession of the leased premises, but that on May 14, 1953, after only three months’ operation thereof by plaintiff, the theater was ordered closed by the state fire marshal, due to hazardous defects contained therein, in violation of laws and ordinances, a condition which rendered the theater unsafe for occupancy by the public. He specifies such complaints as the gas heater not being vented to the outside of the building in accordance with law, defective electric wiring, various openings in the walls in the area near the projection roof, torn floor-covering in the aisles, fabric curtains surrounding the motion-picture screen not being flame repellent, seating arrangement not in accord with the building code, numerous broken and cut seats, exhaust fan in women’s dressing-room not in accordance with law, building not properly secured against unauthorized entry, and an accumulation of trash and rubbish in the area of the projection room. He alleges that the above condition was concealed from him by the defendants, whereas his testimony clearly
 
 *849
 
 reveals the fact that he visited the theater prior to executing the lease and examined the premises and was, or should have been, fully aware of the conditions herein complained of and existing on the premises.
 

 Plaintiff also complains that the motion-picture equipment was at the time of the purchase old, outmoded and useless. This contention is refuted by the facts. He operated the theater for a period of three months, using said equipment, and became dissatisfied when under his management the revenues were not as he had hoped or that defendant allegedly said they would be.
 

 Upon being examined as to his knowledge of the equipment or as to whether he made any investigation as to its condition or serviceability, plaintiff replied that he did not check to determine the kind of equipment he purchased. In his own words, “Well, it’s not the modern design equipment, and which — like I said when I heard about the theater I didn’t look into the equipment so much as to want to get into the business.” Manifestly, he was unconcerned about its worth, its model or resale value, if any. To the knowledge of plaintiff this equipment was owned and had been used by the prior lessee, Rex Amusement Company, who sold same to defendants herein, who, in an almost simultaneous transaction resold same to the plaintiff herein for the purchase price of $3,500 on an “as is where is” basis and with no warranty whatsoever.
 

 The transcript of testimony is replete with admissions by plaintiff and his witnesses that he actually availed himself of the opportunity to ascertain the gross receipts of the theater business, the physical condition of the building and its interior, the age of the equipment and every other pertinent factor connected therewith. Despite the advice given him by his financial adviser as well as by persons in the motion-picture business, and despite his own total inexperience in the theater business, he callously disregarded all of this advice and caution and, relying upon his own judgment, decided to “take a gamble”.
 

 In conclusion, the record does not contain any evidence to sustain the contention that plaintiff was motivated to enter this lease and to purchase this motion-picture equipment by any false or fraudulent representation by the defendants. Plaintiff learned of the availability of the theater by newspaper advertisement; he instigated the negotiation of the contracts herein; he knew the location of the theater; he visited it prior to entering into the contract of lease to ascertain its patronage; he had ample opportunity to examine the premises to determine the obvious condition of the seats and dressing-rooms, floors and curtains. If there had been a misrepresentation by the defendant about any of these factors, which the record does not disclose, the plaintiff with ordinary attention could have easily ascertained the alleged misrep
 
 *851
 
 resentations. We are constrained to hold that the plaintiff’s overwhelming ambition to enjoy the prestige and other advantages accompanying the ownership and management of a motion-picture theater, notwithstanding sound business advice to the contrary, was the sole and only impelling force motivating his decision.
 

 Found in Article 1847 of the LSA-Civil Code, under that section treating of the nullity resulting from fraud of conventional obligations, are certain rules relative to fraud as applied to contracts. Included in this article are the following provisions:
 

 “Fraud, as applied to contracts, is the cause of an' error bearing on a ' material part of the contract, created or continued by artifice, with design ■ to obtain some unjust advantages to the one party, or to cause an inconvenience or loss to the other. From which definition are drawn the following rules:
 

 “3. A false assertion as to the value of that which is the object of the contract, is not such an artifice as will invalidate the agreement, provided the object is of such a nature and is in such a situation that he, who is induced to contract by means of the assertion, might with ordinary attention have detected the falsehood; he shall then be , supposed to have been influenced more by his own judgment than the assertion of the other.”
 

 When the person to whom the alleged false representation is made does not rely on the representations but conducts his own investigation, he will not be heard to complain of fraud. In order for plaintiff herein to establish his action for rescission of either of the contracts of lease or sale on the ground of alleged fraud and misrepresentation, it is incumbent upon him to establish the falsity of a material fact represented by the defendants herein and that he had a right to and actually did rely thereon. Plaintiff has failed to do so in that respect. Charges of fraud are most serious and are never to be imputed to anyone except upon legal and convincing evidence. One who alleges fraud has the burden of establishing it by proof stronger than mere preponderance of evidence. Sanders v. Sanders, 222 La. 233, 62 So.2d 284; Buxton v. McKendrick, 223 La. 62, 64 So.2d 844.
 

 In Rocchi v. Schwabacher, 33 La.Ann. 1364, the court quoted with approval language of the United States Supreme Court found in Slaughter’s Administrator v. Gerson, 13 Wall. 379, 20 L.Ed. 627, as follows:
 

 “The misrepresentation which will vitiate a contract of sale, and prevent a court of equity from aiding its enforcement, must not only relate to a material matter constituting an inducement to the contract, but it must relate
 
 *853
 
 to a matter respecting which the complaining party did not possess at hand the means of knowledge; and it must he a misrepresentation upon which he relied, and by which he was actually misled to his injury. * * * Where the means of knowledge are at hand and equally available to both parties, and the subject of purchase is alike open to their inspection, if the purchaser does not avail himself of these means and opportunities, he will not be heard to say that he has been deceived by the vendor’s misrepresentations. * * * ”
 

 See, also, Overby v. Beach, 220 La. 77, 55 So.2d 873 and authorities cited therein.
 

 Accordingly, for the reasons assigned, the judgment appealed from is affirmed.