438 So.2d 1141 (1983)
Michael HEBERT, d/b/a Associated Artists Agency
v.
LIVINGSTON PARISH SCHOOL BOARD, Melvin E. Brown, and Wayne Howes.
No. 82 CA 1024.
Court of Appeal of Louisiana, First Circuit.
October 11, 1983.
Rehearing Denied November 22, 1983.
*1142 G. Paul Marx, Lafayette, for plaintiff.
J. Donald Cascio, Denham Springs, Myron A. Walker, Baton Rouge, for defendants.
Before LOTTINGER, EDWARDS and ALFORD, JJ.
LOTTINGER, Judge.
This is an action for breach of contract seeking damages, costs and attorney fees. Plaintiff, Michael Hebert, d/b/a Associated Artists Agency, sued defendants, Livingston Parish School Board, Melvin Brown, and Wayne Howes, alleging the breach of a contract under which plaintiff was to provide musical entertainment at the Springfield High School junior prom. The contract was signed by Wayne Howes in his capacity as junior class sponsor at Springfield High School, and was approved by Melvin Brown, principal of the school. Both Brown and Howes are employees of the defendant school board.
After a trial on the merits, the trial court found that none of the defendants named were parties to the contract, and that the contract was executed between plaintiff and the Springfield High School junior class. Accordingly, plaintiff's suit was dismissed, and this devolutive appeal followed.

FACTS
Shortly after the commencement of the 1980-1981 school year, the junior class at Springfield High School conducted a meeting to make preparations for the junior prom to be held in the spring of 1981. Different committees, including an entertainment committee, were selected. A suggestion was made that the musical entertainment for the junior prom be that of a "sound system," meaning a highly amplified disc-jockey show with a light show, records *1143 and tapes. Live bands customarily had been engaged at previous proms. The suggestion to engage a "sound system" rather than a live band was referred to the entertainment committee, where the suggestion was adopted. This decision was approved unanimously by the junior class. Subsequently, the members of the junior class chose the Music Machine, a sound system operated by plaintiff, over several other systems available.
Deanie Herring, as chairperson of the entertainment committee, contacted plaintiff to procure the Music Machine for the prom. A written contract was sent to Miss Herring by plaintiff, with instructions that the contract had to be signed by a faculty representative. The contract is dated November 19, 1980, and is signed by plaintiff and by Wayne Howes as the "Representative" of the Springfield High School junior class, designated as "Employer." It is not readily apparent from the face of the contract whether the Music Machine, designated as "Employee," is a band or a disc-jockey service.
Wayne Howes, prior to signing the contract, showed the document to his principal, Melvin Brown. Both faculty members testified that they thought the Music Machine was a performing band. After Brown approved the contract, the contract was signed by Howes and returned to plaintiff.
Brown and Howes testified that some months later, in February of 1981, they became aware that the music for the prom was not that of a live band. Using a discjockey sound system for the junior prom was deemed inappropriate by Brown, and on March 11, 1981, Brown and Howes wrote to plaintiff, informing him the services of the Music Machine would not be required for the night of the prom, May 2, 1981.
After unsuccessfully attempting to rebook the date, plaintiff demanded payment of the $500.00 fee stated in the contract, inasmuch as the contract provided for payment of the fee in case of cancellation without the written consent of the employee. The instant action followed.

SPECIFICATIONS OF ERROR
Plaintiff-appellant, Michael Hebert, d/b/a Associated Artists Agency, assigns the following specifications of error:
1. The district court erred in failing to hold the Livingston Parish School Board to the obligation of a contract negotiated by a person with apparent authority to bind the Board.
2. The district court erred in failing to bind the Livingston Parish School Board by the acts of Wayne Howes and Melvin Brown, its agents in fact.
3. The district court erred in finding that appellant has a contract with the junior class of Springfield High, which is not a legal entity capable of contracting.
4. The district court erred in failing to impose liability upon appellee Melvin Brown, principal of Springfield High, despite finding that he prevented performance of the contract.
5. The district court erred in refusing to enforce the contract based on an error which had no relation to the principal motive of the contract.

SPECIFICATION OF ERROR NO. 3
The trial court held that the only parties to the contract were plaintiff and the Springfield High junior class, which was designated in the contract as the "Employer." Plaintiff argues that the Springfield High junior class is not a legal entity capable of contracting.
We agree. The junior class is but an administrative classification of certain students at Springfield High, which is an administrative subdivision of the subject school district. Moreover, at the time the contract was executed, the members of the class were unemancipated minors[1] who by law are incapable of contracting, La.Civ. Code art. 1785. Nor can it be said that *1144 Wayne Howes signed the contract as the agent of the students, since as unemancipated minors, the students were incapable of contracting through an agent.[2] Thus, the trial court erred in holding that the Springfield High School junior class was a party to the contract.

SPECIFICATIONS OF ERROR NOS. 1, 2 AND 4
Inasmuch as a prom is a legitimate school function, plaintiff argues that the Livingston Parish School Board is bound by the contract signed by its employee, Wayne Howes. Plaintiff contends that Howes was the agent in fact of the school board and in the alternative argues that Howes was vested with apparent authority to bind the school board.
With the latter proposition we cannot agree. The fact that one person is the employee of another does not of necessity make him an agent of his employer, since the two relationships cannot be equated, Blanchard v. Ogima, 253 La. 34, 215 So.2d 902 (1968). In Lowe & Campbell Sporting Goods Co. v. Tangipahoa Parish School Board, 15 So.2d 98 (La.App. 1st Cir.1943), reversed on other grounds, 207 La. 52, 20 So.2d 422 (1944), this court stated that a merchant could not rely on the apparent authority[3] of a school principal or athletic coach to bind a school board to a contract for the purchase of football equipment to be used by the school team, and that actual authority was required.
Nonetheless, we are of the opinion that Melvin Brown held actual authority to bind the school board in this instance. La.R.S. 17:414.1 reads as follows:
"The principal appointed by the parish or city school board for each public elementary and secondary school shall serve, under the overall direction of the parish or city superintendent of schools, as the administrative officer of the school to which he is assigned. Consistent with the requirements of law and the rules and regulations of the State Board of Elementary and Secondary Education and the parish or city school board by which he is employed, he shall have administrative responsibility for the direction and supervision of the personnel and activities and the administration of the affairs of that school."
In the civil law, the term "administrator" means a manager or conductor of affairs, especially the affairs of another, in his name or behalf. Black's Law Dictionary, Fourth Edition, West Publishing Company 1968. La.R.S. 17:414.1 was enacted by Acts 1976, No. 456, the preamble to which states that the purpose of the act is "to provide relative to the status and duties of principals of public elementary and secondary schools."
At trial, job descriptions for the position of principal and teacher, as promulgated by the defendant school board, were introduced into evidence. According to a list of "performance responsibilities," a principal "supervises and evaluates the school's extracurricular program" and "acts as liaison between the school and the community in interpreting activities and policies of the school and encouraging community participation in school life." The performance responsibilities list for teachers states that a teacher "accepts a share of responsibility for cocurricular activities as assigned" by the principal.
*1145 For a principal to act effectively as the administrative officer for the school, supervisor of extracurricular activities, and liaison between the school and the community, the authority to sign contracts on behalf of the school board must be inferred. While money for the junior prom was to be raised by members of the junior class, the Livingston Parish School Board, by promulgating the job performance responsibilities listed above, commanded its principals and teachers to participate in and supervise extracurricular activities which inevitably lead to contracts such as the instant one, and thus, in the opinion of this court, assumed ultimate financial responsibility for such contracts. Therefore, we find that Melvin Brown, as administrative officer of Springfield High and as supervisor and community liaison for extracurricular activities, held actual, albeit implied, authority to bind the Livingston Parish School Board to the instant contract, and that this authority was properly delegated, in accordance with school board policy, to Wayne Howes, the junior class sponsor. Thus, the school board is a party to the contract and may be held liable for the breach thereof.
However, despite the fact that Melvin Brown prevented performance of the contract and caused its cancellation, we do not find personal liability on his part.[4] Brown's actions throughout the instant scenario were implicitly authorized by his employer, the Livingston Parish School Board. Inasmuch as Brown's actions did not exceed his authority, he is not personally liable under the contract, La.Civ.Code arts. 3010 and 3013.[5]

SPECIFICATION OF ERROR NO. 5
In their answer, defendants specifically pled the affirmative defense of error of fact. Defendants argue that their consent to the contract was vitiated by error since Melvin Brown and Wayne Howes were, at the time the contract was approved and signed, of the erroneous impression that the Music Machine was a live rock-and-roll band.
Plaintiff argues that any such error did not go to the motive for making the contract, which plaintiff asserts is obtaining dance music for the prom. Alternatively, plaintiff contends that even if a live band was the principal cause or motive behind the contract, this error does not invalidate the contract, since he neither knew nor should have known that Brown would not have approved the contract had Brown realized the Music Machine was not a band, La.Civ.Code art. 1826.[6]
Defendants contend that the error in the contract bore on the subject of the contract, that is, there was a factual error as to the substance or substantial quality of the thing to be contracted, and therefore, actual or constructive knowledge of the plaintiff is not required to invalidate the contract, citing La.Civ.Code arts. 1842, 1843, and 1844.[7]
*1146 At trial, a great deal of testimony pertained to whether Wayne Howes had been apprised of the type of music performed by the Music Machine.
Howes testified that he was present in the school gymnasium during all junior class meetings, since he was a class sponsor. However, Howes testified that he did not always pay close attention to the agenda of the meetings, and often went to the lobby to talk with one of the coaches. Howes stated that he was not aware that the students had chosen a sound system instead of a live band. Howes testified that he assumed, upon hearing mention of a "sound system," that this term referred to equipment to be used by a band.
Deanie Herring, chairperson of the entertainment committee, testified that Mr. Howes was in close proximity when the decision was made to rent a sound system rather than hire a band, and that the distinction was explained to Mr. Howes. Keith Patterson, junior class president, could not recall whether Mr. Howes was present when the decision to rent a sound system was made or whether Mr. Howes was aware that the musical entertainment for the prom was not a live band.
When Howes received the written contract from plaintiff via Deanie Herring, a brochure accompanied the contract. The brochure, which was introduced into evidence, contains an illustration which depicts dancers, lights, amplifiers, and a bearded man standing over stereo equipment, to wit, a reel-to-reel tape player and a turntable with a phonographic needle. The bearded man's hand is immediately above the phonographic needle, as if the needle is being placed onto a rotating phonograph record. The literature on the brochure makes reference to a "stereo amplifier," "direct drive Technics turntables" and "speakers." Howes testified that he saw the brochure and read its contents prior to bringing the contract to Melvin Brown for approval.
Under these factual circumstances, defendants cannot avail themselves of the defense of error of fact, regardless of whether the error went to the motive behind the contract or the subject thereof. The inescapable inference which arises is that any error of fact suffered by the defendants was caused by the inattention of Wayne Howes.
Even accepting Howes' testimony at face value, and ignoring that of Deanie Herring, Howes admitted that he apparently had not paid attention and perhaps was not even present when the choice of music was made. A class looks to its sponsor for guidance and depends upon the sponsor to help obtain necessary goods and services for a prom. Howes' lack of diligence toward his responsibilities as class sponsor resulted in his erroneous assumption that the Music Machine was a band. In view of this carelessness, defendants cannot now avoid the obligations of the contract by claiming error of fact. Schorr v. Nosacka, 16 La.App. 20, 132 So. 524 (La.App.Orl.Cir.1931). See also Palmer, Contractual Negligence in the Civil LawThe Evolution of a Defense to Actions for Error, 50 Tul.L.Rev. 1 (1975), and cases cited therein.
Moreover, we are of the opinion that a cursory glance at the brochure which accompanied the contract should have alerted Howes that the Music Machine was not a band. As was mentioned above, in the forefront of the illustration is a tape player and record turntable, with which as a teacher Howes should have some familiarity. Thus, this evidence and the testimony of Deanie Herring casts doubt on whether Howes was truly ignorant of the nature of the music to be contracted for the prom.
For these reasons, we hold that the affirmative defense of error of fact does not avail defendants in the instant action.

*1147 LIABILITY
As was noted by the trial court, plaintiff contracted in good faith to perform a disc-jockey service for the 1981 Springfield High School junior prom. At all times plaintiff stood ready to perform his obligation, but the contract was unilaterally cancelled by Melvin Brown, the school principal. The contract provides for payment of the principal fee if cancelled without written consent of the employee, and provides for the payment of costs and legal fees if the remuneration is not paid. Inasmuch as we find the acts of Wayne Howes and Melvin Brown in signing and subsequently breaching the contract to have been authorized by their employer, the Livingston Parish School Board, judgment in favor of plaintiff and against the defendant school board shall issue accordingly.

DECREE
Therefore, for the above and foregoing reasons, judgment of the trial court in favor of defendants, Melvin Brown and Wayne Howes, and against plaintiff, Michael Hebert, d/b/a Associated Artists Agency, is hereby affirmed. Judgment of the trial court in favor of defendant, Livingston Parish School Board, and against plaintiff is hereby reversed; and there is now judgment in favor of plaintiff, Michael Hebert, d/b/a Associated Artists Agency, and against defendant, Livingston Parish School Board, in the full and true sum of FIVE HUNDRED AND NO/100ths ($500.00) DOLLARS, plus legal interest from date of judicial demand until paid. All costs, both in this court and in the trial court, including FIVE HUNDRED AND NO/100ths ($500.00) DOLLARS as reasonable attorney fees incurred by plaintiff in the prosecution of this cause, are assessed to defendant, Livingston Parish School Board.
AFFIRMED IN PART, REVERSED IN PART, AND RENDERED.
NOTES
[1] There is no indication in the record that any members of the junior class were emancipated or had reached the age of majority.
[2] Note, however, La.Civ.Code art. 3001, which permits an emancipated minor to act as a mandatory.
[3] Although the opinion speaks in terms of "implied authority," use of this term was incorrect, since plaintiff's argument was that by hiring a coach of athletics, the school board clothed the principal or coach with the authority to purchase football equipment on its behalf. This argument urges the employees' apparent authority, which arises when the principal acts in such a way that third parties are justified in assuming the agent has certain authority, Thompson v. Great Midwest Fur Company, 395 So.2d 840 (La.App. 1st Cir.1981). Unlike apparent authority, implied authority is actual authority, which, while unexpressed, is to be inferred from the circumstances, purposes, and nature of the agency, Broadway v. All-Star Insurance Corporation, 285 So.2d 536 (La.1973).
[4] Plaintiff has not re-urged on appeal the personal liability of Wayne Howes; thus, this part of plaintiff's original demand is deemed abandoned.
[5] La.Civ.Code art. 3010 provides:

"The attorney can not go beyond the limits of his procuration; whatever he does exceeding his power is null and void with regard to the principal, unless ratified by the latter, and the attorney is alone bound by it in his individual capacity."
La.Civ.Code art. 3013 provides:
"The mandatory is responsible to those with whom he contracts, only when he has bound himself personally, or when he has exceeded his authority without having exhibited his powers."
[6] La.Civ.Code art. 1826 reads:

"No error in the motive can invalidate a contract, unless the other party was apprised that it was the principal cause of the agreement, or unless from the nature of the transaction it must be presumed that he knew it."
[7] La.Civ.Code art. 1842 reads:

"Error as to the thing, which is the subject of the contract, does not invalidate it, unless it bears on the substance or some substantial quality of the thing."
La.Civ.Code art. 1843 reads:
"There is error as to the substance, when the object is of a totally different nature from that which is intended. Thus, if the object of the stipulation be supposed by one or both the parties to an ingot of silver, and it really is a mass of some other metal that resembles silver, there is an error bearing on the substance of the object."
La.Civ.Code art. 1844 reads:
"The error bears on the substantial quality of the object, when such quality is that which gives it its greatest value. A contract relative to a vase, supposed to be gold, is void, if it be only plated with that metal."