**MARSH INVESTMENT CORPORATION,**
**Plaintiff,**

v.

**John A. LANGFORD, et al, Defendants.**

**PONTCHARTRAIN STATE BANK,**
**Defendant-Third-Party Plaintiff,**

v.

**CRUMP LONDON UNDERWRITERS, INC. and Eunice K. Langford, Third-Party Defendants.**

**Civ. A. No. 79–2020.**

United States District Court, E.D. Louisiana.

Aug. 30, 1985.

Don M. Richard, New Orleans, La., for third-party defendant Eunice K. Langford.

Michael R. Allweiss, New Orleans, La., for defendant & third-party plaintiff Pontchartrain State Bank.

## OPINION ON REMAND

CASSIBRY, Senior District Judge:

The judgment of this court has been affirmed in part and vacated in part, and remanded for further proceedings. *Marsh Inv. Corp. v. Langford*, 721 F.2d 1011 (5th Cir.1983). The single question presented

on remand is whether the prior indebtedness of Eunice Langford Bristow (Mrs. Bristow) to the Pontchartrain State Bank (Bank) should be reinstated.[1] Having carefully studied the record and the applicable Louisiana law, I conclude that the answer is no and enter the following in support of my judgment.

## I.

The facts surrounding the cancellation of Mrs. Bristow's debt were never seriously disputed.[2] Mrs. Bristow's obligation to the Bank arose from her execution of two promissory notes for $74,766.32 and $263,481.78 respectively. Mrs. Bristow executed the notes on behalf of her son, John Langford, and never received any of the proceeds from them. In 1976, the Bank filed suit against Mrs. Bristow to collect these notes. At this point, Langford entered into an agreement with the Bank to restructure his debts as well as those of his mother. The Bank agreed to dismiss the suit against Mrs. Bristow and cancel her notes in exchange for a new note, representing the combined indebtedness of mother and son, executed by Langford and secured by a collateral mortgage on property owned by Marsh Investment Corporation (Marsh). The parties have stipulated that the recollaterization agreement between Langford and the Bank constituted a novation of Mrs. Bristow's debt.

## II.

Langford had no authority to encumber Marsh's property, and Marsh sued to cancel the mortgages. I granted Marsh's motion for summary judgment and ordered cancellation of the mortgages finding they were acquired either through error or fraud and were, therefore, "illegal, null,

and void." *Marsh Inv. Corp. v. Langford,* 490 F.Supp. 1320, 1328 (E.D.La.1980), *aff'd* 652 F.2d 583 (5th Cir.1981). In a third party demand, the Bank sought to recover on a blanket bond and to reinstate Mrs. Bristow's released debts. I denied all relief to the Bank. *See Marsh Inv. Corp. v. Langford,* 554 F.Supp. 800 (E.D.La.1982). On appeal, the Court of Appeals vacated the judgment in favor of Mrs. Bristow and remanded for reconsideration of the Bank's claim against her in light of several contentions grounded in Louisiana law. 721 F.2d at 1015.

## III.

Under the Louisiana law of obligations, legally given consent of both parties is essential to the validity of a contract. La.Civ.Code Ann. art. 1779 (West 1952) (amended and reenacted by Acts 1984, No. 331).[3] When consent has been produced by error, on the part of one or both parties, or by fraud, the consent may be vitiated and the contract invalidated or rescinded. La. Civ.Code Ann. art. 1819 (West 1952) (amended and reenacted by Acts 1984, No. 331); *see also Ferace v. Fullerton,* 425 So.2d 393, 395 (La.App.3d Cir.1982). Not every error will invalidate a contract, but only error as to some point "which was the principal cause" or "motive" for making the contract. La.Civ.Code Ann. art. 1823 (West 1952) (amended and reenacted by Acts 1984, No. 331). This concept of Louisiana law is often referred to as failure of cause. *See Carpenter v. Williams,* 428 So.2d 1314, 1316 (La.App. 3d Cir.1983). Fraud, as applied to contracts, is the cause of an error "bearing on a material part of the contract." La.Civ.Code Ann. art. 1847 (West 1952) (amended and reenacted by Acts 1984, No. 331). Either error or fraud,

---

1. Mrs. Bristow has been referred to as Mrs. Langford in the prior opinions of this court.

2. For the full details of this case, see the opinion of the Court of Appeals, 721 F.2d 1101, as well as the prior opinions of this court reported at 490 F.Supp. 1320 and 554 F.Supp. 800.

3. In 1984 the Louisiana legislature amended the Civil Code articles dealing with obligations.

The amended law became effective January 1, 1985. However, this case arose and will be decided under the prior law. The revisions were substantive in nature and there is no indication that they were intended to apply retroactively. *See Frito-Lay, Inc. v. WAPCO Constructors, Inc.,* 520 F.Supp. 186, 189 (M.D.La.1981) (citations omitted).

depending upon proof of intent or deliberateness, may be the basis of a rescissory action prompted by discovery of a contractual misrepresentation.

The Bank asserts that the facts of this case present a classic example of the Louisiana doctrine of failure of cause. The Bank agreed to the novation of Mrs. Bristow's debt solely on the basis of receiving valid security in the form of a mortgage on the Marsh property. Because the mortgages were invalid, there was no consent on the part of the Bank, and therefore, no contract. Thus, the Bank argues that because it labored under an error of fact, and because of Langford's fraudulent misrepresentations, the novation must be rescinded and Mrs. Bristow's debts reinstated.

■ In response to the Bank's argument of failure of cause, Mrs. Bristow contends that the Bank's own fault in this matter bars the relief it now seeks.[4] Proclaiming her status as an innocent third party, Mrs. Bristow asserts that the Louisiana jurisprudence and the Civil Code support the proposition that contractual negligence on the part of the party seeking rescission counteracts its claim of contractual error. Before delving into a discussion of the effect of the Bank's fault on its claim for relief, it is necessary to address the Bank's contentions that the issue is not properly before the court.

## IV.

■ Citing Rule 8(c) of the Federal Rules of Civil Procedure, the Bank contends that Mrs. Bristow's contractual negligence argument was not affirmatively plead and therefore must be considered waived. However, the requirement that an affirmative defense must be pleaded or waived must be applied in the context of the liberal pleading and amendment policy of the Federal Rules. This policy is embodied in Rule 15(b) which provides that an unpleaded issue, tried by the express or implied consent of the parties, is to be treated as if it had been raised. Thus, Rule 15(b) may permit consideration of an affirmative defense in a case even when not asserted in the pleadings. *See* 6 C. Wright and A. Miller, Federal Practice and Procedure: Civil § 1492 (1971). In such a case, the pleadings may be amended to include issues tried by consent, either by motion or through the judgment of the court, at any time, even on remand following an appeal. *See* 6 Wright & Miller, *supra*, § 1494, at 475.

■ Express consent to the issue of the Bank's negligence exists in this case because it is raised in the pretrial order. *See* 6 Wright & Miller, *supra*, § 1493, at 461. Furthermore, Mrs. Bristow raises the issue in her pretrial memorandum. Thus, the Bank's contention that Mrs. Bristow failed to raise such an argument until appeal is erroneous. The Bank's conduct and fault have been at issue in this case from the beginning. Under these circumstances, no unfair surprise or prejudice will result from the court's consideration of the Bank's fault in reaching a decision in this matter.

## V.

■ The Bank also contends that the issue of contractual negligence or fault is not properly before the court because it is a defense which only the parties to the contract may raise. The Bank cites no law in support of its position, but rather simply argues that Mrs. Bristow was not a party to the novation agreement and, therefore, may not assert a contractual defense. In

---

**4.** In her ultimate memorandum, Mrs. Bristow points out that under the Louisiana Code, as amended in 1984, novation is no longer defined as a contract. *See* La.Civ.Code Ann. art. 1879 (West Supp.1985). Therefore, she reasons that the contractual defense of failure of cause is inapplicable to a novation. Mrs. Bristow's reasoning is faulty in several respects. The fact that a novation is no longer *defined* as a contract does not change the fact that a contractual agreement is involved in this case. Further, the revised article "still contemplates a novation effectuated by agreement, as is the case in the vast majority of instances." La.Civ.Code Ann. art. 1879 comment (a). Finally, as previously explained, the new article is not retroactive and thus is not implicated in this case. *See supra* note 3.

my previous disposition of this matter, I held that Mrs. Bristow was an "innocent party in the restructuring of the loans, did not participate in any of the negotiations, and received none of the funds from the notes she had previously signed." 554 F.Supp. at 807. Although the Court of Appeals did not overturn this factual finding of third party status on the part of Mrs. Bristow, the Court stated that Mrs. Bristow had "constituted Langford her universal agent to deal with the bank." 721 F.2d at 1015. If Mrs. Bristow clothed her son with the power to act as her agent, she is entitled to raise any issue concerning the contract confected by her agent. However, even if she cannot properly be characterized as a "party" to the novation agreement, the issue of the Bank's fault in this matter is properly before the court on remand. The Bank's fault goes to the heart of its case in chief and negates one of the essential elements of its claim for rescission of the novation agreement: its right to rely on Langford's misrepresentations.

## VI.

■ Neither I nor the parties have uncovered any Louisiana law directly on point with this case which concerns the rescission of a novation agreement and the reinstatement of a released debt.[5] However, my conclusion that the Bank is not entitled to rescission of the novation agreement finds support in the jurisprudence and Civil Code articles concerning sales contracts.[6] Typi-

cally, a purchaser seeks to rescind a contract of sale based on alleged defects in the thing bought or on misrepresentations by the seller. Where the purchaser brings a rescissory action in redhibition based on a defective condition, relief is denied where the defect is one which the buyer might have discovered by simple inspection. La. Civ.Code Ann. art. 2521 (West 1952); *see also Wax v. Woods*, 209 So.2d 329, 336 (La.App. 4th Cir.1968). In the case of a misrepresentation, relief is denied where the purchaser had every reasonable opportunity to become informed about the facts and has failed to do so. *White v. Lamar Realty, Inc.*, 303 So.2d 598, 601 (La.App.2d Cir.1974); *Packwood v. Johnson*, 264 So.2d 663, 666 (La.App. 1st Cir.1972).

To establish a right to rescission of a contract based on fraud, the party seeking relief must show a material misrepresentation of fact upon which that party had "a right to rely and actually did rely." *La Croix v. Recknagel*, 230 La. 842, 89 So.2d 363, 367 (1956); *Luquette v. Floyd*, 147 So.2d 894, 899 (La.App.3d Cir.1963). Likewise, in a case of nonfraudulent misrepresentation, or "innocent misrepresentation," a contract may be rescinded when there has been justifiable reliance. *Cryer v. M & M Mfg. Co., Inc.*, 273 So.2d 818, 823 (La. 1973). Thus, "[w]here the means of knowledge are at hand, and equally available to both parties, and the subject of purchase is alike open to their inspection, if the purchaser does not avail himself of these

---

**5.** Mrs. Bristow has directed the court to authority in the civil law which supports her position. If the new obligation were to be annulled because of error, violence or fraud, the novation itself should be considered as not made *except* if the new obligation were declared by reason of a fact imputable to the creditor himself, in which case the novation would continue to subsist.
C. Aubry & C. Rau, Cours de Droit Civil Francais, Obligations § 324, at 233 (6th ed. 1965) (emphasis added).

**6.** For a recent case involving the denial of rescission of a contract for services based on contractual negligence, see *Hebert v. Livingston Parish School Board*, 438 So.2d 1141 (La.App. 1st Cir.1983). In that case, the plaintiff brought

suit for breach of a service contract under which the plaintiff was to provide the musical entertainment for a junior prom. The defendants alleged error of fact, arguing that their consent to the contract was vitiated since, at the time of contracting, they had erroneously believed that the plaintiff was a live band. The Court of Appeals for the First Circuit held that the defendants were not entitled to rescission because the "lack of diligence [on the part of the defendant employee] toward his responsibilities as class sponsor resulted in his erroneous assumption that the plaintiff was a band. In view of this carelessness, defendants cannot now avoid the obligations of the contract by claiming error of fact." 438 So.2d at 1146 (citations omitted).

means and opportunities, he will not be heard to say ... that he was deceived by the vendor's misrepresentations." *Rocchi v. Schwabacher & Hirsch,* 33 La.Ann. 1364, 1368 (1881) (*quoting Slaughter's Administrator v. Gerson,* 80 U.S. (13 Wall.) 379, 383, 20 L.Ed. 627 (1871)).[7]

The Bank's conduct in this case clearly establishes that it had no right to rely on Langford's representations of agency and authority, whether made fraudulently or with reckless disregard of their veracity.[8] The Bank recognized that it needed more than Langford's bald assertions of authority to encumber Marsh's property, but it took no steps to verify the documents which purported to give him that authority. As I have previously held, the Bank was not justified in relying on either the corporate resolution or the shareholder consents. Although the shareholder consents were readily available for inspection, the Bank failed to take steps either to see them or to obtain further information about their validity. 554 F.Supp. at 805. As to the corporate resolution, a "cursory examination of Marsh's corporate records" would have revealed the falsehood. 490 F.Supp. at 1325. "Moreover, the Bank could not have justifiably relied on the opinion by Langford's counsel, Mr. Stassi, which was so qualified that it should have waved a sea of red flags indicating that additional investigation was necessary." *Id.* The means of

checking Langford's authority to act as Marsh's agent lay as "near as the closest telephone." 721 F.2d at 1014. Having failed to make the slightest inquiry into the nature, extent, and very existence of Langford's agency, the Bank is held to have dealt with him at its risk. *See Carey Hodges Associates v. Continental Fidelity Corp.,* 264 So.2d 734, 736 (La.App. 1st Cir. 1972), *quoted in* 490 F.Supp. at 1324.

I have previously held that the Bank failed to act in good faith in the restructuring transaction.[9] I now hold that the Bank has failed to establish its right to a rescission of the novation agreement and the reinstatement of Mrs. Bristow's debts. The Bank has failed to show that it had a right to rely, or in some instances, in fact did rely, on Langford's misrepresentations of authority. If there was error or fraud in this case it was readily apparent. Bank officials knew that Langford was a poor credit risk, knew that he had no connection with the Marsh corporation other than his asserted agency, and expressly discussed the possibility that Langford was attempting to defraud the Bank. The Bank, schooled in financial dealings and fully assisted by counsel, chose to proceed in ignorance in this matter. 721 F.2d at 1014. Such a conscious course of conduct under the suspicious circumstances of this case may properly be characterized under Louisiana law as gross fault or negligence.[10]

7. This case is cited in the comments to new article 1954 of the Louisiana Civil Code which provides that fraud does not vitiate consent where the complaining party could have ascertained the truth without difficulty, inconvenience, or special skill. Article 1954 changes the law in that it generalizes the principles enunciated in former article 1847(3) and (4). Although the change is not retroactive, it is considered to be consistent with views expressed by the Louisiana jurisprudence. *See* La.Civ.Code Ann. art. 1954 comment (a) (West Supp. 1985).

8. Although this court has never held that Langford's representations were fraudulent, in the bankruptcy proceedings before the Bankruptcy Court for the Eastern District of Louisiana, the court held that "Langford did either knowingly or in wreckless disregard cause to be issued this bogus mortgage." In addition, the Fifth Circuit Court of Appeals characterized Langford's ac-

tions in this case as "calculated fraud." 721 F.2d at 1015.

9. For authority supporting the denial of rescission of a contract based on this finding alone, see Restatement (Second) of Contracts §§ 164, 172 (1979).

10. The Louisiana Civil Code defines gross fault as "that which proceeds from inexcusable negligence or ignorance; it is considered as nearly equal to fraud." La.Civ.Code Ann. art. 3556 (13) (West 1953). The Louisiana jurisprudence provides the following edification:

Gross fault undoubtedly implies wanton or wilful negligence.

*Sullivan v. Hartford Accident & Indem. Co.,* 155 So.2d 432, 436 (La.App.2d Cir.1963).

The terms "willful", "wanton", and "reckless" have been applied to that degree of fault which lies between intent to do wrong, and

The result of the Bank's failure to apprise itself of the facts behind Langford's patent misrepresentations can be laid at no doorstep except its own.

My decision to deny the Bank's claim against Mrs. Bristow remains the same regardless of whether she is an innocent party in the restructuring transaction or "the beneficiary of her agent's calculated fraud." This case is dismissed not because Mrs. Bristow's defense succeeded, or because the equities lie in her favor, but because the Bank failed to establish its right to the relief requested.

Therefore, IT IS ORDERED that the Bank's case against Eunice K. Langford be dismissed. The Clerk of Court shall enter judgment accordingly.

the mere reasonable risk of harm involved in ordinary negligence. These terms apply to conduct which is still merely negligent, rather than actually intended to do harm, but which is so far from a proper state of mind that it is treated in many respects as if harm was intended. The usual meaning assigned to the terms is that the actor has intentionally done an act of unreasonable character in reckless disregard of the risk known to him, or so obvious that he must be taken to have been aware of it, and so great as to make it highly probable that harm would follow. It is usually accompanied by a conscious indifference to consequences, amounting almost to a willingness that harm should follow.

*Cates v. Beauregard Elec. Coop.,Inc.,* 316 So.2d 907, 916 (La.App.3d Cir.1975) (citations omitted).

[R]eckless misconduct requires a conscious choice of a course of action either with knowledge of the [harm] involved ... or with knowledge of facts which would disclose this danger to any reasonable man.

Restatement (First) Torts § 500 comment g, *quoted in Sullivan,* 155 So.2d at 436, n. 2.