CRAIN, Judge.
This is an appeal from a summary judgment rendered in favor of defendants in an action under the Jones Act and general maritime law.
It is undisputed that Alfred L. Greaud, III injured his back in 1986, while employed by Carline Geismar Fleet, Inc. (Carline). His condition was diagnosed as focal disc herniation at the L5-S1 level. Greaud underwent therapy and treatment for this condition from which he did not return to work for approximately one year. The possibility of surgery was discussed, but was not performed. Greaud filed suit against Carline for this injury which was settled for the sum of $50,000.
On November 20,1989, Greaud applied for work as a deckhand with Acadian Towboats, Inc. (Acadian). He underwent a pre-employment physical examination and was hired by Acadian on approximately the same date. On March 28, 1990, while working as a deckhand aboard the vessel MTV Port Allen, Greaud was assigned the task of taking up slack in a cable or wire which connected barges to the shore. He was allegedly injured while performing this task. Greaud was subsequently diagnosed and treated for an inguinal hernia which eventually required surgical repair. He received maintenance and cure for the surgical repair of the hernia and during the period of recuperation. He returned to work on June 10, 1990, performing light duty tasks and was laid off on July 20, 1990, allegedly due to lack of available work.
Approximately one week after he was laid off, Greaud consulted a physician and an attorney regarding low back pain which he contends was caused by the accident of March 28, 1990. He alleges that he continually complained of the injury from the date of its onset. The injury complained of was diagnosed as being located at the' L5-S1 level, the same site as that of the 1986 injury. A CT scan was taken on July 27, 1990. The radiologist’s impression was chronic disc herniation with secondary spurring at L5-S1, with additional prominent central and left paracentral soft tissue disc herniation and secondary thecal sac effacement. Greaud sought maintenance and cure for the back injury. Acadian refused, contending that in his employment application and pre-employment physical, Greaud intentionally concealed the fact that he had a pre-existing low-back injury, the knowledge1 of which would have precluded his being hired by Acadian; this pre-existing injury either was the cause of Greaud’s complained of back injury or the pre-existing injury predisposed Greaud to injury which aggravated the pre *54 existing condition. Acadian farther contends that the first time it was aware of the possibility of Greaud’s having sustained a low back injury on March 28, 1990, was after Greaud had been laid off by Acadian.
Subsequently, Greaud instituted this action seeking damages against Acadian and its insurer under the Jones Act; general and punitive damages for the unseaworthiness of the vessel under general maritime law; and maintenance and cure, attorney fees and punitive damages for Acadian’s alleged arbitrary and capricious failure to pay maintenance and cure. Acadian moved for summary judgment seeking dismissal of all claims. Alternatively, Acadian sought dismissal of the claims for maintenance and cure, punitive damages for failure to pay such, and punitive damages pursuant to general maritime law for unseaworthiness.
The trial court rendered summary judgment in favor of defendants, dismissing all claims. In oral reasons for judgment the trial court stated: “Well, there may be some issues to argue over if you get past the main issue, in my opinion, that is clear-cut; and that’s you have a bad faith plaintiff in my opinion....”
Plaintiff appeals the granting of the summary judgment on the grounds that there exist genuine issues of material fact which require resolution by the trier of fact by trial on the merits.

SUMMARY JUDGMENT

A summary judgment should be rendered if the “pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact, and that mover is entitled to judgment as a matter of law.” La.C.C.P. art. 966. The mover has the burden of establishing that reasonable minds must inevitably conclude that on the facts before the court the mover is entitled to judgment as a matter of law. See Insley v. Titan Insurance Co., 589 So.2d 10 (La.App. 1st Cir.1991). A fact is material if it is essential to plaintiffs cause of action under the applicable theory of recovery and without which plaintiff could not prevail. Roadrunner Motor Rebuilders, Inc. v. Ryan, 603 So.2d 214 (La.App. 1st Cir.1992). In determining whether genuine issues of material fact remain to be resolved, any doubt should be resolved against granting the summary judgment and in favor of proceeding to trial on the merits. Sanders v. Hercules Sheet Metal, Inc., 385 So.2d 772 (La.1980). The applicable standard of review is a de novo review, using the same criteria used by the district court in deciding whether summary judgment should be granted. Schroeder v. Board of Supervisors of Louisiana State University, 591 So.2d 342 (La.1991).
The applicable substantive law governing maintenance and cure differs from that governing recovery under the Jones Act and for unseaworthiness of a vessel under general maritime law. Thus, wé will discuss them separately.
a.) Maintenance and Cure
A shipowner has the obligation to provide maintenance and cure to a seaman who is injured or becomes ill while in the service of his vessel. This obligation arises under general maritime law and is implied in every contract for maritime employment and is not dependent on the fault of the shipowner or unseaworthiness of the vessel. Theriot v. McDermott, Inc., 611 So.2d 129 (La.App. 1st Cir.1992), writ denied, 615 So.2d 342 (La.1993). In some cases maintenance and cure is awarded for a pre-existing condition. However, maintenance and cure will be denied where the seaman has knowingly or fraudulently concealed his illness or condition from his employer. McCorpen v. Central Gulf Steamship Corp., 396 F.2d 547 (5th Cir.), cert. denied, 393 U.S. 894, 89 S.Ct. 223, 21 L.Ed.2d 175 (1968). Fraudulent concealment is present and the seaman is not entitled to maintenance and cure “where the shipowner requires a seaman to submit to a pre-hiring medical examination or interview and the seaman intentionally misrepresents or conceals material medical facts, the disclosure of which is plainly desired....” Id. at 549. The concealment or misrepresentation must be material to the employer’s decision to hire the seaman and must be causally related to the injury sustained after employment. Id.
*55 By affidavit, Greaud stated that after the 1986 injury he was returned to “full duty5’ in 1988 after having been released by Dr. John Loupe. He returned to “full duty” as a dispatcher for Australia Fleet. The Acadian employment application did not question whether he had prior back injuries; only whether he had physical limitations which precluded his performing certain duties. Based on the tasks he performed on different jobs subsequent to the 1986 injury and Dr. Loupe’s release, he knew he could perform the duties required of a deckhand. He further stated that during the pre-em-ployment physical, he told Dr. Howard E. Gidden, the examining physician, and Dr. Gidden’s nurse, Ms. Ann Labatut (Mrs. Abel since her subsequent marriage) of the prior back injury and of the medical release to return to heavy manual labor. In his own handwriting and on a separate sheet of paper (separate from the examination form) he gave detailed information to Dr. Gidden about his prior injury. He added that after he was hired by Acadian he informed Charles Canella and Stanley LeJeune, alleged employees of Acadian, of his prior injury and subsequent medical release.
Defendants’ Exhibit F is the deposition of Charles Edward Canella, the pilot of the M/V Port Allen. Therein Canella stated: that he learned of Greaud’s previous back injury approximately one week after Greaud was hired; that he did not tell Mr. Grantham (the president of Acadian) about Greaud’s preexisting injury; and that he did not have the authority to hire or fire Greaud.
Defendants’ Exhibit A is Greaud’s application for employment with Acadian, dated November 20, 1989. In filling out the application, Greaud listed Carline Marine as a previous employer, and wrote “quit” as the reason for leaving Carline’s employ. The Section entitled “Physical Record” provided: “Do you have any physical limitations that preclude you from performing any work for which you are being considered?” Greaud cheeked, “No”. The application continued: “If yes, what can be done to accommodate your limitation? Please describe.” Greaud left that section blank. He signed the statement at the end of the application which stated in pertinent part: “I certify that the facts contained in this application are true and complete to the best of my knowledge and understand that, if employed, falsified statements on this application shall be grounds for dismissal.” He also signed a statement which provided in part: “I hereby declare that I am not disabled in any way which would prevent me from performing all the work applied for in this application. I further declare that the answers to the questions on the application are correct and that any misstatement of fact or omission should be cause for dismissal or rejection....”
Defendants’ Exhibit D is the affidavit of Ms. Labatut, who on November 20,1989, was employed as a nurse by Dr. Gidden. She stated that she interviewed Greaud in connection with his pre-employment physical and questioned him regarding his entire medical history; he did not inform her of a previous back injury; she recorded his medical history on the examination form; had he informed her of a previous back injury she would have noted it on the form; and that Greaud’s complete records from Dr. Gidden’s office were furnished to the parties. By deposition she stated she has no personal recollection of her interview with Greaud.
Defendants’ Exhibit C is the physical examination form dated November 20, 1989, completed during the pre-employment physical. The line headed “Past Medical History (Significant)” lists: “1987 hernia surgery, 1982 broken collar [bone] in auto accident, hx kidney stones Oast 6-89).” In the blank space immediately below, Dr. Gidden illegibly scribbled a phrase. Greaud contends the illegible wording refers to the lumbar problems of which he told Dr. Gidden. By document styled as an affidavit Dr. Gidden stated the phrase reads “Smoker > 1 ppd” (smoker, greater than one pack per day) and does not refer to lumbar injuries. By deposition Dr. Gidden again stated the phrase reads smoker > 1 ppd.
At the bottom of the first page of the examination form appears the typed statement: “I certify that on this date I have examined the above patient as indicated and found them [sic] to be physically able to participate in athletic activities and/or physi *56 cally able to perform duties required in their job description (with exceptions as outlined below). Exceptions: none.” Immediately preceding the certification Dr. Gidden penned “(Note) 3 v lumbar x-ray taken.” On the following page of the form under “Treatment,” Dr. Gidden wrote “lumbar 3-view.” The x-rays were taken and were interpreted by a radiologist to be essentially normal.
Defendants’ Exhibit E is an affidavit by Dr. Gidden wherein he stated: he was retained by Acadian to perform a pre-employment physical on Greaud; this necessitated the questioning of Greaud regarding the disclosure of his entire medical history; Greaud disclosed a medical history of kidney stones, hernia surgery, and a broken collarbone; Greaud did not disclose a prior back injury; and had Greaud disclosed a prior back injury he would have examined Greaud’s back more closely.
In Defendants’ Exhibit C, Dr. Gidden stated that in pre-employment physicals it is general procedure to take 3 to 5 x-rays of the back. Defense Exhibit B is the deposition of Dr. Gidden, wherein he was questioned regarding the circumstances under which lumbar x-rays are ordered in pre-employment physical examinations.
THE WITNESS:
I’m not sure I understand the question. If he’s going to be taking an exam that involves three views of his lumbar spine, would he necessarily have told somebody that he had problems with his back before?
EXAMINATION BY MR. TILTON:
Q. Right.
A. I would have expected him to. Yes.
Q. You would have expected him to?
A. Right.
Q. So the fact that three lumbar x-rays were taken of Mr. Greaud’s back would indicate that somehow he must have had a problem with his lower back?
A. No sir. In this case specifically because with my history and my nurse’s history, there was no note made of nothing like that. And I would have definitely questioned him in that regard, and he did not say anything at all about prior back injuries.
Dr. Gidden further stated that had he been aware of the prior back injury, he would have notified the employer and would have recommended a consultation with Greaud’s treating physician.
Defendants’ Exhibit F is an affidavit by William S. Grantham, President of Acadian, wherein he stated that the decision to hire Greaud was based on the representations made by Greaud in his employment application and pre-employment physical; and had Acadian been aware of Greaud’s prior back injury, Greaud would not have been hired as a deckhand.
The alleged fraudulently concealed pre-ex-isting injury and the knowledge of Acadian are material to Greaud’s recovery of maintenance and cure. After reviewing the pleadings, depositions, affidavits and documents attached thereto we find the existence of genuine issues of material fact which preclude summary judgment in this claim. At issue is Greaud’s disclosure of his preexisting condition to Dr. Gidden and Nurse Labatut at the pre-employment physical. Although Dr. Gidden stated that he routinely orders lumbar x-rays when performing pre-employment physicals, he specifically noted that he was ordering three lumbar x-rays of Greaud. Were this a routine procedure for all pre-employment physical examinations, why would Dr. Gidden specifically note such in the section of the examination form where he certifies Greaud as fit for duty? Also, Dr. Gidden’s response to questioning about the circumstances under which he ordered the x-rays on Greaud, as opposed to other patients, suggests it may not have been routine in this instance.
Further, the admission of Mr. Canel-la, the pilot of the vessel, that he was aware of Greaud’s pre-existing back injury as early as one week after Greaud began employment with Acadian, raises a material factual issue regarding whether Canella was the agent of Acadian. This is determinative of whether Canella’s knowledge can be attributed to Acadian. See Hebert v. Livingston Parish School Board, 438 So.2d 1141 (La.App. 1st Cir.1983); Automotive Finance Co. v. Kesk, Inc., 200 So.2d 136 (La.App. 4th Cir.1967). *57 If this knowledge is attributable to Acadian and after having acquired it, Acadian kept Greaud on the payroll as a deckhand, then Acadian could be estopped from asserting Greaud’s alleged concealment as a defense.
b.) Jones Act And General Maritime Law Claim
McCorpen, 396 F.2d 547, dealt with the fraudulent concealment of a pre-existing injury in a claim for maintenance and cure. Recovery under the Jones Act is based on the fault of the ■ employer. Assuming the task is a routine duty of a deckhand who is fit for duty, if the employer knew that plaintiffs condition precluded plaintiffs performing the task, but ordered him to do so anyway and performance of the task caused plaintiffs injury, defendant would be at fault. See Rapitis v. Sea Land Corp., 1990 AMC 1501, 1990 WL 135834 (W.D.Wash.1990). Thus, Acadian’s knowledge and the operator’s action in giving the order are material to plaintiffs recovery under the Jones Act.
Recovery under general maritime law is based on the unseaworthiness of the vessel. Under general maritime law a vessel and its operator owe to its crew the duty to furnish a seaworthy vessel. Breach of the warranty of seaworthiness applies to orders given aboard ship. A negligent order breaches the duty of seaworthiness. Id. at 1506. Assuming the operator of the vessel knew of plaintiffs pre-existing injury, the determination of whether the operator’s order to Greaud to straighten the slack in the cable resulted in a breach of the warranty of seaworthiness depends upon whether it was reasonable under the circumstances.
Acadian’s knowledge of Greaud’s pre-exist-ing back injury, either through the pre-em-ployment physical or through Canella; whether Canella’s knowledge is attributable to Acadian; and Acadian’s and the operator’s breach of duty, if any, are material to plaintiffs recovery under both the Jones Act and general maritime law. Additionally, if all these issues are resolved in favor of the defendants, there remains the question of whether the misrepresentation is causally related to the injury. There are issues of material fact here which require resolution by trial on the merits and preclude the granting of summary judgment on these claims.
Accordingly, we reverse the summary judgment. Costs of this appeal are assessed against defendants.
REVERSED.